**STATE of Tennessee, Appellee,**

v.

**Evelyn Faye MOSHER,
Defendant/Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

April 5, 1988

Permission to Appeal Denied by Supreme Court July 25, 1988.

William B. Mitchell Carter, Walter E. Grantham, II, Chattanooga, for Mosher.

W.J. Michael Cody, Atty. Gen., Kathy M. Principe, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Stanley J. Lanzo, William H. Cox, III, Asst. Dist. Attys., Chattanooga, for the State.

## OPINION

WADE, Judge.

The defendant was found guilty by a jury on charges of first degree murder. She appeals from a sentence of life imprisonment.

On October 23, 1982, two men hired by the defendant came to her residence and murdered her husband. A plastic drop cloth (tarpaulin) was forcibly stuffed down the throat of the victim as he struggled for life.

Prior to arrest and indictment, the defendant retained the services of an attorney. Her counsel made contact with the office of the district attorney and directed that any future communication be made through him as her representative. The state made no direct contact with the defendant for almost three years.

In the summer of 1985 the police were contacted by Jay Lewis, an acquaintance of the defendant. Lewis, who was serving time in prison for an unrelated offense, informed law enforcement personnel of his past relationship with Mosher and of her previous requests for him to help kill her husband.

Lewis, in cooperation with the investigation, agreed to re-establish his friendship with the defendant. After making telephone contact, he was able to meet with her on several occasions in the early fall of 1985. Lewis was accompanied by an undercover police officer during these meetings on the pretext that the officer sought a hired killer to murder his wife.

During these meetings, Lewis (who obviously consented to the procedure) wore electronic surveillance equipment which permitted the police to record their conversations. In these taped communications, Mosher admitted to hiring the two men to kill her husband. She specifically complained that the murderers failed to make the job appear accidental thereby depriving her from collecting double indemnity under an insurance policy.

The recorded statements were admitted into evidence at trial. As the tapes were played, the jurors were permitted to read the corresponding transcriptions made from the recordings.

The defendant contends that the trial court committed prejudicial errors on certain evidentiary issues:

1. By the admission of tape recorded statements of the defendant obtained in violation of her Fourth Amendment rights.

2. By the admission of the tape recorded statements in violation of her Fifth Amendment and Sixth Amendment rights and contrary to the Professional Code of Ethics.

3. By the admission of transcripts of the recorded statements.

After a review of the record, the judgment of the trial court is affirmed.

## I

The first issue raised by the defendant concerns the evidence acquired by the state through the electronic surveillance of her communications with Jay Lewis. She contends that the taped conversations were acquired by means constituting an unreasonable search and seizure. No search warrant issued prior to the recording of the statements.

In *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the Supreme Court, in a plurality opinion, held that a one party consensual surveillance did not violate the right of the defendant to be free from unreasonable searches and seizures. This appeal points out the distinction between the Fourth Amendment to the U.S. Constitution and Article I, Section 7 of the Tennessee Constitution and urges the adoption of the dissenting rationale in *White:*

There is a qualitative difference between electronic surveillance, whether the agents conceal the devices on their persons or in walls or under beds, and conventional police stratagems such as eavesdropping or disguise. The latter do not so seriously intrude upon the right of privacy. The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak. But as soon as electronic surveillance comes into play the risk changes crucially. There is no security from that kind of eavesdropping, no way of mitigating the risk, and so not even a residuum of true privacy.... Electronic aids add a wholly new dimension to eavesdropping. They make it more penetrating, more indiscriminate, more truly obnoxious to a free society.

Electronic surveillance, in fact, makes the police omniscient; and police omniscience is one of the most effective tools of tyranny.

*Id.* at 759–760, 91 S.Ct. at 1130, (quoting *Lopez v. U.S.*, 373 U.S. 427, 465–466, 83 S.Ct. 1381, 1402, 10 L.Ed.2d 462 (1963)).

Justice Marshall joined in the dissent, concluding that the Fourth Amendment required the issuance of a search warrant as a prerequisite to the use of electronic surveillance. *Id.* 401 U.S. at 795, 91 S.Ct. at 1147.

■ The principles previously established by the courts of this state preclude the expansive constitutional interpretation advanced by the defendant. So long as one of the participants to an electronically recorded conversation consents to the procedure, there exists no constitutional infringement. *Woodson v. State*, 579 S.W.2d 893, 897–898 (Tenn.Cr.App.1978); *State v. Morris*, 666 S.W.2d 471, 473 (Tenn.Cr.App. 1983), permission to appeal denied (Tenn. 1984); *State v. Lee*, 618 S.W.2d 320, 323 (Tenn.Cr.App.1981), permission to appeal denied (Tenn.1981).

Prior to *White*, it was well established that an informant could, without a warrant, have a conversation with a suspect, make notes, then testify at trial using those notes. *See Hoffa v. U.S.*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The majority in *White* observed that the use of electronic surveillance provided a valuable investigative tool:

> Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent.

*White*, 401 U.S. at 753, 91 S.Ct. at 1126.

■ The test of time has accredited the rationale of the majority of the Supreme Court as constituted in 1975. The technological advancements in electronic surveillance provide an accuracy of conversational content previously tarnished by the frailty of human recollection. While not invulner-

able to abuse, this technique has nonetheless become a constitutionally acceptable means of investigation, conditioned only upon the consent of one of the participants to the communication. This court finds no intrusion upon the rights of the defendant.

The first issue is without merit.

## II

Rule 8 of the Rules of the Supreme Court of this state provides, in part, as follows:

> **Communicating with One of Adverse Interest.**—(A) During the course of his representation of a client a lawyer shall not:
>
> (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

D.R. 7–104.

The defendant obtained the services of attorney Leroy Phillips shortly after the commission of the offense. She asserts that the office of the district attorney agreed not to seek statements from the defendant without the permission of her counsel. Notwithstanding this agreement, the defendant alleges (and the state concedes) the district attorney was instrumental in arranging the taped communications.

■ The defendant contends that the actions of the district attorney deprived the defendant of her Fifth Amendment (and the corresponding state constitutional provision) protection against self-incrimination; violated her Sixth Amendment right to the assistance of counsel; and contravened his code of ethics.

In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the Supreme Court made the following observation with respect to right of counsel:

> ... [T]he right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to

the help of a lawyer at or after the time that judicial proceedings have been initiated against him—"whether by way of formal charge, preliminary hearing, indictment, information and arraignment."

*Id.* at 398, 97 S.Ct. at 1239.

The defendant, almost three years after the hired killing of Bob Mosher, was not in custody, had successfully acquired over $200,000 in insurance benefits, and was not subject to interrogation at the time she entered into the conversations that ultimately led to the conviction. Secure from the passage of time and the inaction on the part of the state, she voluntarily and apparently without hesitation made the most incriminating comments imaginable with minimal solicitation. The obvious voluntary nature of the statement, notwithstanding the communication between counsel, precludes any claim of Fifth Amendment violation. *Clariday v. State,* 552 S.W.2d 759, 769 (Tenn.Cr.App.1976).

It follows in this instance that there could be no Sixth Amendment violation absent prior arrest or other formal proceeding:

> [N]othing in previous Supreme Court rulings mandated the right to counsel prior to arrest, and that "[t]here is no constitutional right to be arrested.... Thus, under the Sixth Amendment, a criminal defendant has the right to the guiding hand of counsel during every critical stage of a criminal proceeding, once it has been formally commenced by arrest or indictment, but he or she has no right to counsel during police investigation or surveillance prior to the initiation of "adversary judicial proceedings."

*Id.,* (citing *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)).

Because the district attorney general entered into an agreement with counsel in 1982 not to communicate directly with the defendant, the defendant asserts that the 1985 recorded statements were acquired in breach of applicable ethical guidelines.

The state contends that no violation could occur under these circumstances when the district attorney is not only authorized by law to conduct investigations but also compelled to do so as his general statutory duty. Alternatively, the state argues that if the disciplinary rule was violated, the appropriate remedy is through the Board of Professional Responsibility rather than through the exclusion of evidence by the courts; the question is whether the breach results in prejudicial error, constitutional or otherwise. Additionally, the state asserts that taking the argument of the defendant to its logical extreme would frustrate altogether the investigative process whether undertaken by the district attorney or other law enforcement agencies; if protection were granted by the ethical mandate, every suspect would simply employ an attorney and thereafter enjoy absolute protection against undercover investigation.

A review of the record reveals that while various law enforcement agencies in the Chattanooga area made the initial investigation, the lead ultimately resulting in the taped communications between the defendant and Jay Lewis was provided by Lewis to officials in the State of Georgia.

Afterwards, communication was established with the Chattanooga Police Department which, in turn, contacted the office of the district attorney. The offense took place in Signal Mountain, Tennessee, a small municipality with its own law enforcement department. TBI became involved in the investigation and, in cooperation with the other agencies involved, eventually acquired the inculpatory statements of the defendant. Perhaps by default, the district attorney became a part of the investigative effort. A full-time investigator from his office conducted the taping process.

Evelyn Mosher was a suspect at the time of the offense. While the state was unsuccessful in establishing anything more than a degree of suspicion, the nature of the inquiry was such that the employment of counsel was deemed prudent. It is evident that her representation was communicated to the office of the district attorney general. It is equally apparent, that while the intensity of the investigation had waned considerably over a three year period, the

office of the district attorney was instrumental in coordinating the surveillance that ultimately achieved its intended purpose.

 Disciplinary Rule 7.104(A)(1) of the Code of Professional Responsiblity is incorporated into Rule 8 of the Tennessee Rules of the Supreme Court. That prohibition against communication absent the consent of adverse counsel has been found to apply in criminal cases. *U.S. v. Springer,* 460 F.2d 1344, 1354 (7th Cir.1971), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972). Some courts have found the rule applicable to non-lawyer law enforcement officers acting on behalf of prosecutors under an alter-ego theory. *U.S. v. Thomas,* 474 F.2d 110, 112 (10th Cir.1973), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973). None of the courts recognizing these principles, however, have excluded the evidence acquired pursuant to the prohibited communication.

In *U.S. v. Vasquez,* 675 F.2d 16 (2nd Cir.1982), the defendant employed counsel to represent him during testimony before a grand jury. Vasquez alleged that a subsequent tape recorded conversation with an informant was inadmissible as acquired in contravention of the disciplinary rule even though no formal charge existed at the time of the conversation. The court, in its rejection of the argument, made the following observation:

> Such a principle would simply enable criminal suspects, by retaining counsel, to hamper the government's conduct of legitimate investigations. Even assuming this provision of the Code to be applicable to a criminal investigation, which is doubtful, it was not intended to lead to such a result.

*Id.* at 17.

This rationale applies to the present case. To extend protection from investigation over an indefinite period would frustrate altogether the legitimate interests of the state. The collective action by law enforcement officials constituted an appropriate response to the new information implicating the defendant in the murder.

Irrespective of the applicability of the disciplinary rules to the district attorney,

the inquiry resulting in the indictment and conviction of the defendant cannot be deemed impermissible under the circumstances of this case.

This issue is without merit.

### III

 Finally, the defendant contends that the introduction of transcripts of the inculpatory conversations unduly emphasized the content and, in addition, violated the rationale of the best evidence rule.

The trial court implemented the following charge:

> [T]he tape is the evidence, the transcript is an aid for you in understanding the tape. But the evidence itself is the tape and not the paper. So if there's any difference, you will in all events rely on the this tape itself.

The charge places proper emphasis on content of the tapes. This court has previously authorized the use of transcripts by the jury under these circumstances. *State v. Smith,* 656 S.W.2d 882 (Tenn.Cr.App. 1983).

This issue must be overruled.

The judgment of the trial court is accordingly affirmed.

DUNCAN, P.J., and JONES, J., concur.