STATE of Tennessee, Appellee,

v.

Clyde REED and Ralph Teague, Appellants.

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 5, 1992.

D. Clifton Barnes, Office of Public Defender, 3rd Judicial Dist., Morristown, for appellant Clyde Reed.

Ethel P. Laws, Morristown, for appellant Ralph Teague.

Charles W. Burson, Atty. Gen. and Reporter, John B. Nesbit, III, Asst. Atty. Gen., Nashville, and Edward R. Sempkowski, Asst. Dist. Atty., Morristown, for the State.

## OPINION

WADE, Judge.

The defendants, Clyde Reed and Ralph Teague, were convicted of conspiracy to possess with intent to sell or deliver a Schedule II substance. Range I offenders, each defendant received a sentence of four years.

In addition to challenges to the sufficiency of the evidence, specifically whether there was an overt act in furtherance of the conspiracy, the defendants present the following issues:

(1) whether venue was properly established in Hamblen County; and

(2) whether a transcription of an undercover surveillance tape was properly admitted into evidence.

On December 14, 1990, Officer Mike Finley, working as an undercover agent for the Third Judicial District Drug Task Force, met the defendant, Clyde Reed, at the Phillips 66 Fastop Market located along Interstate 81 and Highway 25E in Hamblen County. Finley, using the alias Mike Williams, wore a hidden recorder and transmitter. He was accompanied by a paid informant, Phillip Pendleton, who assisted throughout the course of events. Officers Steve Burns and Larry Samsel, driving separate automobiles, were assigned surveillance responsibilities.

Based upon information supplied by the informant, the officers planned to arrange a sale of Dilaudid to the defendant Reed. Finley, the informant, and Reed met at the market in Hamblen County. After some discussion, Finley and the informant joined Reed and his companion, identified only as Wayne,[1] in Reed's 1980 black Oldsmobile. Reed drove to the Newport Motor Court in Cocke County. At a stop along the way, Reed injected what appeared to be cocaine into his left arm. Meanwhile, Reed had discussed with Officer Finley the prospect of purchasing 200 doses of Dilaudid. The officer offered to sell Reed one bottle, containing 100 pills, for $2,500.00, or both bottles for $4,000.00. Reed agreed to purchase both. Officer Finley told Reed that he had another 75 loose Dilaudid in the trunk of his car.

Upon arriving at the Newport motel, Reed directed some of the occupants to leave, made a telephone call, went into a bathroom with his wife, Martha Reed, then returned with a bag of white powder that

**1.** Wayne was not identified at trial. He apparently departed from the others after they arrived in Newport.

he identified as cocaine. Reed gave Officer Finley a sample and offered to sell Finley an ounce for $1,750.00. Eventually, Officer Finley purchased an ounce of cocaine from Reed for $1,750.00 cash.[2]

Pamela Whitten, who was tried with the defendants but acquitted, arrived at the motel room shortly after the exchange. She was accompanied by the defendant Teague. Finley, the informant, and Reed then returned to Reed's Oldsmobile and drove back to Hamblen County. Whitten, who was driving, and Teague followed in their 1985 Chevrolet pickup truck. Along the way, Reed explained to Officer Finley that "this is the pill man, as soon as we got to Exit 8 he would buy the pills." Reed planned to purchase the officer's two bottles of pills for $4,000.00, sell them for $5,000.00, and then use his $1,000.00 profit to purchase the 75 pills the officer had in his vehicle.

Upon their return to the market in Hamblen County, Reed, Teague, and Finley went inside. Reed told Finley that he thought they were being followed. Reed and Teague walked over to the black pickup truck. The following exchange (the tape and the transcript, as interpreted by Officer Finley, were played to the jury) took place:

*Reed:* I know it, we don't none of us wanna get busted that's what I'm a saying. He's got the money.

*Teague:* It ain't no ripoff, I brought the money. It ain't no ripoff....

Finley testified that Teague displayed a large amount of cash around his waist area as he assured the officers that this was "no ripoff." Thereafter Reed gave assurances that Teague was prepared to deal:

*Finley:* You got all the money?

*Reed:* Yeah, he's got the money. Ain't no problem about tha[t]. See yonder.

*Finley:* Which car followed you all?

*Reed:* That black Trans Am and that [gray] one sitting over yonder.

*Teague:* That silver one right behind it.

*Finley:* Well that damn black car over there.

*Whitten:* Yeah, he ... come up here at the Ramada Inn and pulled in and parked and he come over here. That silver car come over here and parked.

*Reed:* Let's just ride back over yonder on the other side of the bridge and take care of it and I'll bring [you'ns] right back to the car. Just meet us at the Thunderbird, or ah around there at the Southland one. See if they follow us.

*Teague:* If they follow us anymore....

*Reed:* [You'ns] go on and see if they follow you.

*Finley:* If they follow you all just keep on driving and we'll just ... I'll call him and we'll do it some other time. Cause I ain't gonna get busted.

*Reed:* Meet you at Southland or something. You hear me. We'll meet you at Southland or the Thunderbird, look at see if they follow us.

Finley, the informant, and Reed returned to Reed's vehicle. Whitten, still driving, and Teague left the parking lot. At that point, Officer Finley arrested Reed and by radio directed the surveillance team to arrest Whitten and Teague.

Officers Burns and Samsel, who were able to hear the transmitted conversations of Officer Finley, followed him to the market. They stayed within view as Reed drove Officer Finley and the informant to Newport and back. They took several photographs. The officers observed Teague and Whitten follow Reed from Newport to the market in Hamblen County. When the pickup truck left the market, Officers Burns and Samsel participated in the stop of the vehicle about a mile away. Teague had $17,277.00 in the pocket of his jacket.

The defendant Reed did not testify. Teague claimed that Reed owed him $90.00 and was only present as a means of getting the debt paid. He testified that his exhibiting his cash and assurances that he had no intention to "rip off" anybody was in response to Finley's comment that he (Finley) had been ripped off in Newport on an earlier occasion. Teague testified that he did not discuss purchasing Dilaudid from Offi-

---

**2.** Neither of the defendants were charged with the sale of cocaine in Hamblen County.

cer Finley and disclaimed any intention of conspiring to purchase the drug for resale. Teague explained his possession of so much money by the fact that he had sold his business for $90,000.00. He claimed that although $60,000.00 of it had been stolen, he did not use banks and always carried his money.

At the time of this offense, Tenn.Code Ann. § 39–17–417(a)(4) prohibited possession of "a controlled substance with intent to manufacture, deliver or sell...." The statute defining criminal conspiracy provides, in part, as follows:

(a) The offense of conspiracy is committed if two (2) or more people, each having the culpable mental estate required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn.Code Ann. § 39–12–103(a).

The defendants contend that they did nothing in Hamblen County that would constitute an overt act. The pertinent portion of the statute relevant to this defense provides as follows:

(d) No person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired.

■ On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn.1983); Tenn.R.App.P. 13(e).

The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in evidence are matters entrusted exclusively to the jury as the triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App.1978). The guilty verdict accredits the testimony of the state witnesses. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). In summary, the evidence is sufficient when a rational trier of fact can conclude that the defendant is guilty. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The evidence was clearly sufficient as to the defendant Reed. Although the defendant Teague makes a persuasive argument to the contrary, the evidence establishing that he committed an "overt act" in pursuance of the conspiracy to purchase the Dilaudid for resale or delivery was also sufficient.

During his initial meeting with Officer Finley in Hamblen County, Reed discussed the purchase of two bottles of Dilaudid for the sum of $4,000.00. The defendant Teague met Reed at the Newport motel and followed as Reed drove Officer Finley and the informant back to the market in Hamblen County. As the defendants discussed the possibility of a bust with Officer Finley, Teague assured the officer that it was "no ripoff, I brought the money." In the face of the possible bust, Teague acquiesced with the suggestion that the transaction take place at another location. Officer Finley saw the money. The record indicates that Reed confirmed its presence. After the arrests, Teague was found to have over $17,000.00 cash in his possession. Although Teague attempted to explain that he had the money through legitimate means, the circumstances indicated otherwise. The jury was entitled to reject the testimony.

In summary, we find the evidence sufficient to support the conviction of each defendant.

## I

The defendants claim that the state failed to establish venue in Hamblen County. The defendants assert that any conspiracy took place outside of Hamblen County.

Article 1, Section 9 of the Tennessee Constitution provides in part that in all criminal prosecutions by indictment or presentment, the accused has the right to a "speedy public trial, by an impartial jury of the County in which the crime shall have been committed. . . ." *See* Tenn.R.Crim.P. 18. The state has the burden of proof that the offense was committed in the county of the indictment. *Harvey v. State*, 213 Tenn. 608, 376 S.W.2d 497 (1964). Venue may be shown by a preponderance of the evidence which may be either direct or circumstantial or both. *Hopper v. State*, 205 Tenn. 246, 326 S.W.2d 448 (1959). Slight evidence is sufficient. *State v. Bennett*, 549 S.W.2d 949, 951 (Tenn.1977). A jury may derive reasonable inferences as to venue from the proven facts. *Smith v. State*, 607 S.W.2d 906 (Tenn.Crim.App.1980). Rule 18(b) provides that "[i]f one or more elements of an offense are committed in one county and one or more elements in another, the offense may be prosecuted in either county." *See State v. Knight*, 616 S.W.2d 593 (Tenn. 1981).

Discussions between the defendant Reed and Officer Finley about the Dilaudid transaction were initiated in Hamblen County. And, while the defendant Teague first made contact with Reed in Cocke County, Teague followed Reed's vehicle to Hamblen County. It was in Hamblen County that Teague assured Officer Finley that his involvement was "no ripoff" and that he had the purchase money available. Those acts were, in our view, in furtherance of the criminal conspiracy and adequately linked Hamblen County to the crime. Venue here is based upon more than mere speculation. *See State v. Bloodsaw*, 746 S.W.2d 722, 725 (Tenn.Crim.App. 1987).

## II

The defendants final argument is that the transcript of the tape recording should not have been permitted into evidence. The defendants submit that the tape recording itself and that only should have been allowed into testimony. In *State v. Mosher*, 755 S.W.2d 464 (Tenn. Crim.App.1988), our court upheld the following charge:

[T]he tape is the evidence, the transcript is an aid for you in understanding the tape. But the evidence itself is the tape and not the paper. So if there's any difference, you will in all events rely on the . . . tape itself.

*Id.* at 469.

In *State v. Coker*, 746 S.W.2d 167 (Tenn. 1987), our Supreme Court confirmed the rule adopted in *State v. Jones*, 598 S.W.2d 209, 223 (Tenn.1980):

[T]he tape recordings and compared transcripts are admissible and may be presented in evidence by any witness who was present during their recording or who monitored the conversations, if he was so situated and circumstanced that he was in a position to identify the declarant with certainty, and provided his testimony in whole, or in part, comports with the other rules of evidence.

746 S.W.2d at 172.

Here, Officer Finley testified to the defendants' participation in the crime. The original tape he made was admitted in evidence and, ultimately, its transcription. Officer Finley testified that the transcription was accurate. Ellipses appeared in those portions of the tape that were unintelligible.

The jury instruction in regard to the transcripts was as follows:

Members of the jury, as you are handed those [transcripts], I want you to listen to this instruction, please. You are being handed a document which purports to be a transcript of a tape recording that you're about to hear. It's being given to you to assist you in following along in listening to the tape.

You're the judge of whether it's an accurate transcript of the tape that you're about to hear. If you find that it is not an accurate transcript of the tape you hear, the tape itself is the thing that you

are to consider. The tape is the evidence that you are about to receive.

This instruction, in our view, places the proper emphasis on the content of the tape rather than the content of the transcription. The verdict illustrates that the jury accredited the significant portions of the transcript. That was their prerogative. In consequence, we find no error by the admission of the transcript.

Accordingly, the judgment is affirmed.

BYERS, P.J., and BIRCH, J., concur.