IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1997 SESSION

FILED

January 14, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9606-CC-00260 |
| Appellee, | ) | |
| | ) | MONTGOMERY COUNTY |
| VS. | ) | |
| | ) | HON. ROBERT W. WEDEMEYER, |
| ALONZO TONY WATSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Forgery; robbery; evading arrest) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


**PAULA OGLE BLAIR**                      **JOHN KNOX WALKUP**
176 2nd Ave. N.                       Attorney General & Reporter
Suite 406
Nashville, TN 37201                   **LISA A. NAYLOR**
     (On appeal)                      Asst. Attorney General
                                      450 James Robertson Pkwy.
**GREGORY D. SMITH**                      Nashville, TN 37243-0493
One Public Square
Suite 134                             **JOHN CARNEY**
Clarksville, TN 37040                 District Attorney General
     (At trial)
                                      **WILLIAM CLOUD**
                                      Asst. District Attorney General
                                      204 Franklin St.
                                      Suite 200
                                      Clarksville, TN 37040


OPINION FILED:_____



**AFFIRMED**



**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was charged with forgery, passing a forged instrument, robbery and evading arrest. A jury convicted him of all but the passing a forged instrument charge, which was dismissed. He was sentenced as a Range II multiple offender to two years incarceration on the forgery conviction; six years incarceration on the robbery; and eleven months, twenty-nine days in the workhouse for evading arrest. In this appeal as of right, the defendant contends that the evidence is insufficient to support his convictions; that the State's proof that he committed the evading arrest offense on January 20, 1995, is at fatal variance with the January 11, 1995, date alleged in the indictment; that the State failed to prove venue; and that the trial court erred in refusing to give certain special jury instructions. Upon our review of the record, we affirm the judgment below.

## FACTS

### A. Forgery

Steve Darnell testified that he had signed, as drawer, a check in the amount of five hundred forty-four dollars and fifty-eight cents ($544.58) payable to Robert Lafferty; Robert Lafferty testified that he had never received it and had not signed the "Robert Lafferty" on the back of the check. The check was introduced as an exhibit to Darnell's testimony ("the Lafferty check"). Fannie Barrett testified that a black male had come into Brenner's, the store in which she worked, accompanied by one of the store's customers, Mack Watkins. The black male had a check payable to Robert Lafferty which he was trying to negotiate to the store. Barrett asked the man for some identification and he responded that he did not have any. Barrett then called the office on whose account the check was drawn and established that Lafferty was a white male. Realizing that the

2

man with the check was not Lafferty, Barrett "gave him the check back and told him I could not cash it for him."

Mack Watkins, Jr., testified that he had taken the defendant to the furniture store at which Barrett worked, and that the defendant had had the Lafferty check. He testified that, since he had an account there, he "was going to see would she cash [the Lafferty check] on my word." He testified that the defendant had passed the check to Barrett or one of the clerks and that they had given it back to him, "Because he didn't have proper identification." Following this, he testified, he had driven the defendant to Bo and Bob's.

Bobby Joe Adkins testified that he owned Bo and Bob's Bi-Rite. When shown the Lafferty check at trial, he testified that the defendant had brought it into his store to cash it. The defendant had presented the check as payment for approximately one hundred dollars ($100.00) worth of groceries. Adkins' daughter, who was the cashier at the time, accepted the check.

Grant R. Sperry, testifying as an expert witness in forensic document analysis, stated that, in his opinion, the defendant "probably wrote the Robert Lafferty endorsement signature" which appeared on the back of the Lafferty check. He also testified that the term "probably" put the likelihood "in the area of 95 to 98%." Steven J. Kasarsky, testifying as an expert witness in forensic latent fingerprint analysis, stated that the defendant's palm print was on the Lafferty check.

## B. Robbery

Loretta Nagey, an employee of Nagey's Market, testified that the defendant

3

had come into the store on January 11, 1995, and "got a great big pile of groceries." She testified that he had given her a check,[1] telling her "it was on Andy Phillips." As she handed the money to the defendant, she looked at the check and then told him "this check is not no good." She testified that she had told him to give the money back to her, he did, and then "he snatched it back, and snatched the check back." He subsequently ran out of the store. When asked, "What was your feeling when he grabbed the money?" Nagey responded, "It unnerved me. . . . I got scared. I didn't know what he had in his pocket."

## C. Evading Arrest

Vernon Mosley, investigator with the Montgomery County Sheriff's Department, testified that he had followed a vehicle which he suspected the defendant to be driving and turned on his blue grill lights. When the vehicle did not stop immediately, he turned on his siren. The vehicle pulled over and the defendant got out. According to Mosley, "As he stepped out it appeared to me he was coming back toward where I was at. . . . I stepped out of the vehicle and said, 'Sheriff's department.' Immediately when I said sheriff's department he turned and took off running across College Street." Mosley next saw the defendant twenty to thirty minutes later in other officers' custody. Clifton Smith, a sergeant with the Montgomery County Sheriff's Department, testified that the defendant had been apprehended "around nine days" after January 11, 1995.

## ANALYSIS

We first address the defendant's contention that the evidence is not sufficient to support his forgery conviction. A defendant challenging the sufficiency of the

---

[1]The check presented by the defendant at Nagey's Market was not the Lafferty check.

proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Our criminal code provides that, "A person commits an offense who forges a writing with intent to defraud or harm another." T.C.A. § 39-14-114(a) (1997). The definition of "forge" includes "to . . . [a]lter, make, complete, execute or authenticate any

5

writing so that it purports to: Be the act of another who did not authorize that act." T.C.A. § 39-14-114(b)(1)(A)(i) (1997). In this case, the proof established that the defendant somehow came into possession of the Lafferty check, forged Lafferty's endorsement on the back of the check, and then proceeded to negotiate the check to Bo and Bob's Bi-Rite. The defendant's actions are a classic example of forgery.

The defendant's argument on this issue is that he "was basically charged with forging Steve Darnell's name on a check and that there was no proof to that effect at trial." In other words, the defendant is actually arguing that a fatal variance exists between the indictment and the proof. We disagree.

The indictment charging the defendant with the forgery provides as follows:

> That [the defendant] . . . unlawfully and with intent to defraud Welker & Darnell Attys. of the sum of $544.58, did forge, alter, execute or authenticate and make, without the authorization of the said Welker & Darnell, Attys., a certain paper writing of the following tenor, words and figures, to wit: [at which place a copy of the front of the Lafferty check appears] so that the said paper writing purported to bear the signature of the said Steve Darnell as Drawer or Endorser.

The clear import of the charge is that the defendant forged a signature on a particular check. The allegations simply misidentify whose signature the defendant forged.

We think this misidentification is similar in effect to the misidentification of the buyer when a defendant is charged with selling drugs. In that situation, our Supreme Court has held that

> where the indictment specifies the purchaser of illegal narcotics but the proof reveals that another person made the actual buy, the variance [between the indictment and the proof] is not material and does not prejudice the defendant's substantial rights, provided (1) the indictment otherwise sufficiently informs the defendant of the charge against him such that he will not be misled and can adequately plan a

6

> defense and (2) the variance is such that the defendant cannot be prosecuted again for the same offense due to double jeopardy principles.

State v. Mayes, 854 S.W.2d 638, 641 (Tenn. 1993). Here, the defendant does not even argue that he was misled as to the charge against him, or that he was unable thereby to adequately plan a defense. Moreover, the record demonstrates that his trial attorney had no trouble in conducting his cross-examinations or otherwise dealing with the State's proof. The indictment is adequately drafted so as to protect the defendant from again being charged with forging that particular check. Therefore, the variance between the charge and the proof is not fatal and this issue is without merit.

As to the robbery conviction, we first note that robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (1997). The defendant contends that the evidence is insufficient because it did not establish that he took the money from Nagey by putting her in fear. We find it unnecessary, however, to decide whether the defendant took the money from Nagey by putting her in fear because we hold that he took the money from her by violence.

While the term "violence" is not defined in our criminal code, this Court has previously cited with approval the definition set forth in Funk and Wagnalls Standard Desk Dictionary (1977): "physical force unlawfully exercised." See State v. Black, 745 S.W.2d 302, 304 (Tenn. Crim. App. 1987); See also Black's Law Dictionary, 5th ed. (defining "violence" in part as the "[u]njust or unwarranted exercise of force"). Nagey testified that the defendant had "snatched" the money from her and then run out of the store. That is, the defendant used physical force to grab the money from Nagey's hand as she held it: similar to a purse-snatcher grabbing a pocketbook from someone's hand

7

as he runs by. This Court has previously recognized that purse-snatching is robbery. See State v. Jackson, 814 S.W.2d 740, 743 (Tenn. Crim. App. 1991). We hold that the defendant's actions in taking the money from Nagey also constitute robbery. This issue is without merit.

The defendant's contention that the evidence was insufficient to convict him of evading arrest is based on the fact that the indictment alleges that the offense occurred on January 11, 1995, whereas the proof demonstrated that the defendant was arrested on or about January 20, 1995. Because this is the identical argument he makes regarding the "fatal variance" between the indictment and the proof on this charge, we will address both issues simultaneously.

As indicated above, a variance between the factual allegations contained in an indictment and the proof at trial is not fatal "(1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984). Variances between the indictment and the proof as to when the offense occurred are particularly innocuous. Our code provides that "[t]he time at which the offense was committed need not be stated in the indictment, but the offense may be alleged to have been committed on any day before the finding thereof, or generally before the finding of the indictment, unless the time is a material ingredient in the offense." T.C.A. § 40-13-207 (1997). And, "except where a special date is essential or time is of the essence of the offense, the time of the commission of the offense averred in the indictment is not material and proof is not confined to the time charged." State v. West, 737 S.W.2d 790, 792 (Tenn. Crim. App. 1987).

8

Time is not of the essence of the offense of evading arrest. In January, 1995, this crime was committed when someone intentionally fled from anyone they knew to be a law enforcement officer and they knew the officer was attempting to arrest them. T.C.A. § 39-16-603(a) (1991). The proof in this case established that Officer Mosley followed the defendant with his grill lights and siren on and that, as soon as the defendant heard the officer say "Sheriff's Department," he ran away. This evidence is sufficient to support a conviction for evading arrest. The variance between the date alleged in the indictment and the date proved at trial is immaterial. The defendant claims in his brief that he is "uncertain with what he was charged" but the record belies this assertion. The defendant's "substantial rights" were not affected by the variance and both of these issues are without merit.

The defendant next contends that he was entitled to a directed verdict at the close of the prosecution's proof because the State failed to prove venue. We disagree. The State is required to prove that the offenses were committed in the county of the indictment by only "a preponderance of the evidence." T.C.A. § 39-11-201(e) (1997). The evidence may be direct, circumstantial, or both. Hopper v. State, 326 S.W.2d 448, 451 (Tenn. 1959). Slight evidence is sufficient if it is uncontradicted. State v. Bloodsaw, 746 S.W.2d 722, 724 (Tenn. Crim. App. 1987). Moreover, "[a] jury may derive reasonable inferences as to venue from the proven facts." State v. Reed, 845 S.W.2d 234, 238 (Tenn. Crim. App. 1992).

In this case, several of the State's witnesses testified about the names of the businesses in which they encountered the defendant, as well as the streets on which these establishments were located. Officer Mosley testified about the route the defendant drove as he followed him prior to pulling him over, including street names. All

9

of this proof was uncontradicted. This evidence was sufficient for the jury to properly infer that the crimes had been committed in Montgomery County. This issue is without merit.

In his last issue, the defendant asserts that the trial court erred when it refused to give certain special jury instructions. The record on appeal does not contain the jury charge. Accordingly, this alleged error is not reviewable. See Hester v. State, 562 S.W.2d 214, 215-16 (Tenn. Crim. App. 1977). It is the appellant's duty to prepare a complete record relevant to the issues raised on appeal. T.R.A.P. 24(b); State v. Hopper, 695 S.W.2d 530, 537 (Tenn. Crim. App. 1985). When the record does not contain the proceedings relevant to the issue, this Court is precluded from considering it. State v. Griffith, 649 S.W.2d 9, 10 (Tenn. Crim. App. 1982).

The judgment below is affirmed.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
DAVID H. WELLES, Judge


10