# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 2000 Session

## STATE OF TENNESSEE v. DAVID B. GARDNER

**Appeal from the Circuit Court for Robertson County**
**No. 9789 & 9780      John H. Gasaway, Judge**

---

### No. M1999-02337-CCA-R3-CD - Filed August 10, 2000

---

The Defendant was indicted for seven counts of forgery. He was subsequently tried by a Robertson County jury and found guilty of all counts, and the trial court sentenced him as a career offender to an effective sentence of twenty-four years. In this appeal as of right, the Defendant argues that the trial court erred by concluding that the evidence establishing venue was sufficient to support his convictions and by sentencing him improperly. We hold that the State carried its burden of proving venue by a preponderance of the evidence and that the trial court properly sentenced the Defendant. Accordingly, we affirm the conviction.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH, J., and JOHN EVERETT WILLIAMS, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, David B. Gardner.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; John Carney, District Attorney General; Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On November 14, 1995, a Robertson County jury convicted the Defendant, David B. Gardner, of seven counts of forgery. On July 19, 1996, the trial court sentenced the Defendant as a career offender to six years incarceration for each count and, in accordance with the jury verdict, fined him $250 for each count. The trial court ordered that the sentences for counts one through four be served concurrently and that the sentences for the remaining counts be served consecutively, resulting in an effective sentence of twenty-four years.[1]

---

[1] The trial court also ordered that the sentences be served consecutively to a twelve-year sentence for unrelated charges that the Defendant was serving at the time of the sentencing hearing.

Pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, the Defendant now appeals his convictions and his sentence. He raises the following issues on appeal: (1) whether the evidence presented at trial was sufficient to support his convictions; and (2) whether his sentence is excessive. We affirm the judgment of the trial court.

Pam Stewart, the director of the Robertson County Outreach for Special Olympics, testified that her purse was stolen in February 1995. She stated that she reported the theft to police and to her bank on February 6, 1995, a few days after she realized that her purse was missing. Stewart recalled that the stolen purse contained cash, credit cards, and checks. Some of the checks belonged to the Robertson County Outreach Program and required two signatures, that of Pam Stewart and that of another Outreach Program employee, Karen Binkley. At the time Stewart's purse was stolen, the checks had already been signed by Karen Binkley. Stewart identified five checks, which were later entered as exhibits, as those that had been in her purse at the time it was stolen. Each of the checks was forged, and Stewart testified that no one acting on behalf of the Outreach Program had authorized the checks. The check numbers and amounts were as follows: check number 196 made payable to Kroger for sixty-five dollars; check number 198 made payable to Kroger for fifty-five dollars; check number 199 made payable to Kroger for sixty-five dollars; check number 204 made payable to the Defendant for sixty-five dollars; and check number 206 made payable to the Defendant for sixty-five dollars.

In addition, Stewart testified that two other checks from her personal checking account, which she and her husband, Monty F. Stewart, held jointly, had been forged. One of the checks, number 1391, was made payable to Steve Williams in the amount of sixty-five dollars and bore the forged signature of Monty F. Stewart. Pam Stewart reported that the signature on the check was not that of her husband and that the checks were never in her husband's possession after her purse was stolen. The other check, number 1394, was made payable to Kent Smith in the amount of sixty-five dollars and bore the forged signature of Pam Stewart.

Marlin Ellis, a cashier at Kroger, testified that he was the Defendant's first cousin. He stated that he recalled cashing two of the checks at issue, check number 204 and check number 206, for the Defendant. His clerk code was printed on both checks at the time he received them. According to information printed on the checks, check number 204 was cashed on February 9, 1995 at 7:46 p.m., and check number 206 was cashed on the same date at 9:45 p.m.

Troy Bigbee, another cashier at Kroger, testified that he was acquainted with the Defendant. He stated that he cashed four of the checks at issue for the Defendant. His clerk code was printed on the checks. According to information printed on the checks, Bigbee cashed check number 198 on February 12, 1995 at 7:26 p.m. and check number 199 immediately afterwards at 7:27 p.m. He cashed check number 1391 on February 3, 1995 at 7:24 p.m. and check number 1394 on February 7, 1995 at 4:34 p.m. Bigbee stated that he specifically remembered the Stewart name on the checks and that the Defendant was the person who cashed all four checks.

Karen Ogburn, a third cashier at Kroger, testified that she had known the Defendant "all [her] life." She reported that she cashed check number 196 for him at 11:51 p.m. on February 12, 1995.

Her clerk code was listed on the check. She testified that she remembered the check specifically because it was the first time she had cashed a Robertson County Outreach Program check. She also stated that she specifically remembered cashing the check for the Defendant.

Detective Jeff White of the Springfield Police Department testified that on February 13, 1995, he was called to Kroger, where he observed the Defendant standing in a check-out aisle. He recalled that as he approached the Defendant, the Defendant took a check from one of the clerk's hands, "wadded it up," and placed it "underneath [his] clothing." White reported that the check was a Robertson County Outreach Program check which had not yet been filled out. White arrested the Defendant, but was unable to recover the check.

The Defendant argues that the evidence presented at trial was insufficient to support his convictions. However, his sole argument with regard to sufficiency concerns venue. He contends that the State failed to prove that each forgery occurred in the same county. Specifically, he complains that Kroger cashier Marlin Ellis did not specify in his testimony the location of the Kroger where he worked and cashed the forged checks. He argues, "all check/forgery counts involving Marlin Ellis as the State's sole witness must be dismissed because the State did not prove all elements of the crime – namely jurisdictional venue."

Because Article 1, Section 9 of the Tennessee Constitution gives a person accused of a crime the right to have a jury trial in the county in which the crime was committed, venue is considered a jurisdictional fact in a criminal prosecution. Harvey v. State, 376 S.W.2d 497, 498 (Tenn. 1964); Ellis v. Carlton, 986 S.W.2d 600, 601 (Tenn.Crim. App. 1998). It has thus been stated that the jurisdiction of the trial court is limited to the crimes which occur within the territorial boundaries of the county in which it sits. Ellis, 986 S.W.2d at 601; State v. Hill, 847 S.W.2d 544, 545 (Tenn.Crim.App.1992); see also Tenn. R. Crim. P. 18.

While venue is not an element of a crime, the State must prove venue by a preponderance of the evidence. Tenn. Code Ann. §§ 39-11-201(e), (f); Harvey, 376 S.W.2d at 498. Slight evidence is enough to carry the prosecution's burden of preponderance if it is uncontradicted. State v. Bloodsaw, 746 S.W.2d 722, 724 (Tenn. Crim. App.1987). In addition, circumstantial evidence may be used to prove venue. State v. Bennett, 549 S.W.2d 949, 950 (Tenn. 1977); see also State v. Reed, 845 S.W.2d 234, 238 (Tenn. Crim. App. 1992). Furthermore, "[a] jury may derive reasonable inferences as to venue from the proven facts." Reed, 845 S.W.2d at 238.

The Defendant argues that the evidence was insufficient because the State failed to prove an element of the crime, specifically "jurisdictional venue." However, as previously noted, venue is not an element of a crime, but rather a jurisdictional question. We will therefore address the Defendant's argument solely as an issue of venue.

In this case, Kroger cashiers Karen Ogburn and Troy Bigbee testified that they both worked at the Kroger store in Springfield, which is located in Robertson County. However, cashier Marlin Ellis did not specify the exact location of the Kroger store where he worked, although he did testify that he lived in Robertson County. All three cashiers testified about information which was printed

on the backs of the stolen checks at the time they were cashed. The information included the cashier number, the aisle number, the transaction number, and the date and time of the transaction. In addition, each of the checks contained specific information which did not vary: The same bank account number was printed on the back of each check, and the first line printed on the back of each of the checks read "DEP ONLY #875."

Consideration of the consistent information printed on the back of each of the forged checks, Ellis' statement that he lived in Robertson County, the other cashiers' testimony that they worked at the Kroger in Springfield, and Pam Stewart's testimony that she also lived in Robertson County leads to the clear and obvious inference that the forgeries all took place at the Kroger located in Robertson County. Therefore, the jury could have rationally determined that all of the transactions at issue took place in Robertson County. Furthermore, we note that at the time of trial, venue was uncontradicted and apparently became an issue only on appeal. We thus conclude that the State carried its burden of proving venue by a preponderance of the evidence.

The Defendant next argues that he was improperly sentenced. The trial court sentenced him as a career offender to six years for each count. The court ordered that the sentences for counts one through four be served concurrently and that the sentences for the remaining counts be served consecutively, resulting in an effective sentence of twenty-four years. The Defendant acknowledges that he is a career offender. See generally Tenn. Code Ann. § 40-35-108 (specifying the requirements for classification as a career offender). The mandatory sentence for a career offender for a Class E felony is six years. See id. §§ 40-35-108(c), 40-35-112(c)(5). Thus, the Defendant contests only the imposition of consecutive sentences in his case. He argues that because all seven counts occurred between February 3, 1995 and February 12, 1995, they should be considered a single criminal episode, warranting concurrent sentencing.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are

adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Tennessee Code Annotated § 40-35-115 provides that a trial court may order consecutive sentences if it finds by a preponderance of the evidence that

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
> (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) [t]he defendant is sentenced for an offense committed while on probation; or
> (7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). In this case, the trial court found that the Defendant was a "professional criminal who ha[d] knowingly devoted [his] life to criminal acts as a major source of livelihood," id. § 40-35-115(b)(1), and that he was "an offender whose record of criminal activity [was] extensive." Id. § 40-35-115(b)(2).

The determination of whether to impose concurrent or consecutive sentencing is a matter within the discretion of the trial court. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997); Howell v. State, 569 S.W.2d 428, 433 (Tenn. 1978). When reviewing the decision of a trial court concerning the imposition of concurrent or consecutive sentencing, this Court is guided by the sentencing considerations set forth at Tennessee Code Annotated § 40-35-103, namely that

> (2) [t]he sentence imposed should be no greater than that deserved for the offense committed;
> . . .
> (4) [t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed; and

(5) [t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed.

Tenn. Code Ann. § 40-35-103(2), (4), (5). See also State v. Lane, 3 S.W.3rd 456, 460 (Tenn. 1999).

Similarly, the Sentencing Commission Comments to Tennessee Code Annotated § 40-35-115 advise that "consecutive sentences should not routinely be imposed in criminal cases and the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." This Court has previously noted that

[t]he legislative purposes of sentencing include the imposition of a term in relation to the seriousness of the offense, confinement when necessary to avoid deprecating the seriousness of the crime, the provision of an effective deterrent to others, and the restraint of those with a long history of criminal conduct. An aim is to avoid inequalities for similar crimes and to impose the least severe measure.

State v. McKnight, 900 S.W.2d 36, 57 (Tenn. Crim. App. 1994).

In sentencing the Defendant in this case, the trial judge stated, "The Defendant has 11 prior felony convictions prior to the seven convictions imposed by the jury, which is the subject of this hearing. That is a total of 18 felonies over a course of time of about 15 years." While the exact number of prior felony convictions in this case is somewhat unclear from the record, the record clearly supports a finding of multiple prior felony convictions over a period of fifteen years.[2] The Defendant himself admits that "it was not in dispute that [he] had multiple prior felony convictions." We therefore conclude that the record clearly supports the trial court's finding that the Defendant is "an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(2). In addition, the record likely supports the trial court's finding that the "defendant is a professional criminal who ha[s] knowingly devoted [his] life to criminal acts as a major source of livelihood." Id. § 40-35-115(1). Either of these factors would support the imposition of consecutive sentences in this case. See generally id. § 40-35-115 (governing multiple convictions). We also note that the presentence report indicates that the Defendant was on parole at the time of the offenses at issue.

At the sentencing hearing the State argued that the Defendant's record demonstrated that when not confined, the Defendant occupied himself violating the law. The trial judge apparently agreed. We conclude that the trial court did not abuse its discretion by ordering consecutive sentences in this case. One of the factors pertinent to consecutive sentencing seems particularly suited to the Defendant's case: "Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct." Id. § 40-35-103(1)(A). Because of the Defendant's lengthy prior record and apparent lack of potential for rehabilitation, we conclude that

---

[2] It appears from the record that the Defendant may have actually received thirteen felony convictions between 1980 and 1995, including multiple burglaries, forgeries and larcenies.

the aggregate length of the sentences, although substantial, is no greater than the Defendant deserves. Although it may seem severe to the Defendant, we cannot say that the aggregate length of the sentences is unnecessary.

The judgment of the trial court is accordingly affirmed.

_____
DAVID H. WELLES, JUDGE