**STATE of Tennessee, Appellee,**

v.

**Richard Joe BLOODSAW, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 6, 1987.

Permission to Appeal Denied by Supreme Court on Feb. 1, 1988.

Robert H. Crawford, Jr., Chattanooga, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, Frank M. Graves, Jr., Jerry S. Sloan, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

The defendant, Richard Joe Bloodsaw, appeals as of right his conviction for incest and resulting eight (8) year sentence.

In his first issue and the one which we find requires reversal of this conviction, the defendant contends that the State failed to prove that the offense was committed in Hamilton County.

This case involves the sexual abuse by the defendant of his two-year-old daughter. The Hamilton County Grand Jury returned a two-count indictment charging aggravated rape and incest. The jury acquitted the defendant of aggravated rape and lesser included offenses under Count 1.

Sgt. Mumzell Pope Dockery of the Chattanooga Police Department testified that she began her investigation of this case on February 26, 1986, when she was called by Human Services to Erlanger Children's Hospital with reference to a two-year-old girl who was infected with gonorrhea. It was stipulated that the defendant and the child's mother were also infected.

On March 3, 1986, the defendant made a tape recorded statement in which he acknowledged that he was the natural father of the child and admitted that on Saturday morning February 15, 1986, he had rubbed his erect penis against and between the lips of her vagina. While the proof clearly establishes that this offense occurred in a bedroom where the defendant and the mother of the child had been sleeping, it fails to place that bedroom within the county of Hamilton.

Under the Constitution of Tennessee (Article 1, Section 9) and the statutes of this State (Tenn.R.Crim.P. 18), an accused is entitled to trial in the county in which the offense is committed. *Smith v. State*, 607 S.W.2d 906, 907 (Tenn.Crim.App.1980). Venue is a jurisdictional matter and not an element of the crime charged. *See Stin-*

son v. State, 181 Tenn. 172, 180 S.W.2d 883 (1944); *Dukes v. State,* 578 S.W.2d 659 (Tenn.Crim.App.1979). The burden is on the prosecution to prove that the offense was committed in the county laid in the indictment. *Harvey v. State,* 213 Tenn. 608, 376 S.W.2d 497 (1964). Venue may be shown by a preponderance of the evidence which may be either direct or circumstantial. *Hopper v. State,* 205 Tenn. 246, 326 S.W.2d 448 (1959).

In discussing the venue issue at the hearing on the motion for a new trial, the trial judge observed as follows:

> My note taking is not as good as some peoples, but I do have a note here that there was testimony that something happened in Hamilton County, Tennessee, or something was located in Hamilton County, Tennessee. But whatever it was, at the time the question was raised at that time, it was—it seemed to me that there was enough evidence to establish venue. It takes very little evidence, uncontroverted evidence to establish venue, which has to be established only by a preponderance of the evidence. And this was during Pope Dockery's testimony. At the time it was being testified that she was called by Human Services, and there would have been some question calculated to establish venue by the Attorney General that would have caused me to have made that note.

■■■■ We agree with his legal analysis that with reference to venue slight evidence will be enough to carry the prosecution's burden of preponderance if it is uncontradicted. See *State v. Bennett,* 549 S.W.2d 949, 951 (Tenn.1977). However, we fail to see where testimony by Sgt. Dockery that the hospital where the victim was examined is located in Hamilton County has any probative value whatsoever to prove where the act of incest was committed. The prosecution made no suggestion as to other proof from which the jury could have found that the offense occurred in Hamilton County.

In its appellate brief the State argues in support of venue as follows:

> The record indicates that at the time of his arrest the defendant's address was 3021 Northway Drive in Chattanooga, (Exhibit 1), and that the Norma Jean Fitten, the mother of the victim also resided at that address. (Exhibit 3, p. 1). In his taped statement to the police, the defendant indicated that the sexual conduct occurred in the bedroom where he and Ms. Fitten had been sleeping. (Exhibit 3, pp. 7, 13). From this evidence, the jury could have inferred that the criminal acts took place at the Northway Drive residence in Hamilton County.

After a careful review of this record we have concluded that we cannot accept this argument.

■■■■ Exhibit 1 is a waiver of rights form signed by the defendant at 0913 hours on March 3, 1986. The heading of this form includes the defendant's name and shows his address as 3021 Northway Drive, Chattanooga, Tennessee. With reference to this exhibit Sgt. Dockery testified that she obtained the information thereon from the defendant and that the blanks had been filled in before the waiver was signed by the defendant.

Exhibit 2 is a cassette tape which contains both the statement of the defendant and a statement of his brother, Cornelius Bloodsaw. The record reflects that the exhibit was played for the jury.

The document referred to as Exhibit 3 is a transcript of the defendant's taped statement which is contained in Exhibit 2. The transcript includes an introductory statement by the examiner, Sgt. Dockery. It is within this introduction that we find the statement, "The mother of the victim is Norma Jean Fitten, same address" which is relied on by the State to connect the offense to 3021 Northway Drive.

It is important to point out at this time that the document referred to as Exhibit 3 was never received in evidence but was only marked for identification. When the jurors were handed copies of the transcript they were instructed by the trial judge as follows:

> Members of the jury, what the Attorney General has just handed you is what

purports to be a transcript of a tape recording that the witness is about to play to you. The tape recording is the evidence. The purported transcripts have been given to the jury to assist you in listening to the tape recording, in following the tape recording. If you find there's something on the purported transcript that you do not hear on the tape recording, disregard it. Disregard anything you see on the transcript that is not on the tape recording. If you find discrepancies, then you go by the tape recording. The tape recording, as I say, is the evidence that is to be considered by the jury. The purported transcript is simply for your assistance.

The wisdom of this admonition becomes clear when one listens to the actual tape recording (Exhibit 2). At the beginning of the tape the offense and victim are identified and then the examiner states, "the parent is a Norma Jean Fitten, address is 2509 Ocoee Street." No city or county is stated. After explaining that this was to be a statement of Richard Bloodsaw—address 3021 Northway Drive, the examiner makes further introductory remarks including the statement, "The mother of the victim is Norma Jean Fitten, same address."

We are unable to determine from the record how much, if any, of the introductory remarks were played for the jury. The transcript of the evidence simply contains the statement, "Whereupon, Exhibit No. 2 was played in open court."

The record does not support a finding that the State met its burden presenting even that slight evidence required to establish venue. In fact, there is nothing to indicate any conscious effort by the prosecution to establish the fact during the trial.

We cannot allow venue to be bottomed on speculation that this offense occurred at 3021 Northway Drive, Chattanooga, in view of substantial evidence in the appellate record, albeit not presented to the jury,

that the crime occurred at 2509 Ocoee Street.[1]

Accordingly, this judgment of conviction must be reversed and the case remanded for a new trial.

While we find no reversible error in the remaining issues we will discuss each of them briefly.

 The defendant's admissions in his taped statement and during his testimony that he was the father of this young victim adequately establishes the legal relationship required to sustain a charge of incest under T.C.A. § 39–4–306.

We find no error in the admission of the defendant's taped statement. After an evidentiary hearing, the trial court found that the officers had complied with the requirements of *Miranda* and that the statement was voluntary. The trial court's findings in such matters are binding on this Court if they are supported by material evidence. *State v. Pritchett,* 621 S.W.2d 127, 133 (Tenn.1981). This record contains such evidence.

 Next the defendant says the combination of four "trial experiences" deprived him of his right to a fair trial. First, he complains that the State was allowed to introduce evidence of his prior arrest.

During his direct examination the defendant testified that he had never filled out or signed a waiver of rights form before. On cross-examination the State was allowed to cross-examine him as follows:

Q. Okay. Now, you said you'd never read one of these rights waivers before?

A. No, sir.

Q. You'd never heard these before?

A. Well, on TV, things like that.

Q. You'd never heard them explained to you before?

A. I've heard them at—not this—

Q. Did an Officer Ballard explain these rights to you once before?

1. The presentence report reflects that defendant's mother and siblings live on Northway Drive but that the defendant, his common-law wife, Norma Fitten, and their five children, including the victim, lived on Ocoee Street. The "location of incident" as shown on the police report is 2509 Ocoee Street.

DEFENSE COUNSEL: Objection at this point, Your Honor. May we approach the bench?

THE COURT: Come to the bench a minute. (Whereupon, a bench conference was held off the record in the presence of the jury.)

THE COURT: All right, overrule the objection. Go ahead.

Q. Mr. Bloodsaw, did not Mr. Ballard advise you of these same rights earlier?

A. It wouldn't—not on no paper. All he did was—

Q. I'm not—I don't care, on paper or not. Did Mr. Ballard tell you about what your rights were?

A. He just said, "You have the right to remain silent. Anything you say can or will be used against you." And he took me to jail.

Q. Did he tell you though these same rights that Ms. Dockery had told you about?

A. She didn't tell me.

Q. She never read you these rights?

A. No, sir, she didn't.

We find no abuse of discretion in allowing these questions on cross-examination. The subject was opened by the defendant and the brief questions asked by the State were proper impeachment. See *State v. McNish,* 727 S.W.2d 490 (Tenn.1987). Furthermore, the defendant was not asked about an arrest but volunteered that he was taken to jail after Ms. Ballard advised him of his right to remain silent.

Defendant next submits without argument and without citing authority that "The trial court denied Bloodsaw's attempt to have the preliminary hearing in this cause be played for the consideration of the jury." This lack of compliance with Rule 27(a)(7) T.R.A.P. constitutes a waiver of this issue. *State v. Eberhardt,* 659 S.W.2d 807 (Tenn.Crim.App.1983).

It is next contended that the trial court erred in allowing the State to replay the entire tape of the defendant's statement during closing argument.

■ While it has been held to be error to allow the State to replay the entire inter-

view of a defendant during closing argument, the Supreme Court went on to hold in *State v. Coe,* 655 S.W.2d 903 (Tenn. 1983), that such error could be harmless. We believe that to be the case here. We are satisfied that the verdict was not adversely affected by the playing of the tape especially in view of the fact that the jury acquitted the defendant of the more serious charge. We do not mean to suggest by this ruling that this practice should be repeated on retrial.

■ In his final issue the defendant argues that since the jury rejected the pertinent elements necessary to convict of aggravated rape there cannot be sufficient proof to convict of incest because that charge contemplates all of the elements of rape plus the added elements of the father-daughter relationship.

Under the facts present in this record, the defendant could have been convicted of both aggravated rape and incest. See *State v. Brittman,* 639 S.W.2d 652 (Tenn. 1982) for holding that single act of intercourse supported conviction for both aggravated rape and incest. The jury saw fit to acquit the defendant of aggravated rape and convict him of incest. We are not allowed to speculate as to the jury's reasoning in doing so; however, the acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. *Wiggins v. State,* 498 S.W.2d 92 (Tenn.1973).

There is ample evidence to support a finding by any rational trier of fact that the defendant had carnal knowledge of his daughter and thus was guilty of incest beyond a reasonable doubt. Tenn.R.App.P. 13(e).

The failure of the State to prove venue being fatal to this conviction, the judgment of the trial court is reversed and the case is remanded for a new trial.

DUNCAN and BYERS, JJ., concur.