# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY 2000 SESSION



**FILED**

March 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| STATE OF TENNESSEE, ) | |
| ) | **M1999-00315-CCA-R3-CD** |
| Appellee, ) | |
| ) | **Rutherford County** |
| v. ) | |
| ) | **Hon. J. Stephen Daniel, Judge** |
| GREGORY LAVELL CARSON, SR., ) | |
| ) | **(Aggravated Child Abuse)** |
| Appellant. ) | |

**FOR THE APPELLANT**:               **FOR THE APPELLEE**:

**JERRY SCOTT**                              **PAUL G. SUMMERS**
**JOHN KEA**                                  Attorney General & Reporter
110 City Center Building
100 East Vine Street                        **MARK E. DAVIDSON**
P. O. Box 1216                               Assistant Attorney General
Murfreesboro, Tennessee  37133-1216        425 Fifth Avenue North
                                             Nashville, Tennessee  37243

**AFFIRMED**

**L. T. LAFFERTY, SENIOR JUDGE**

## OPINION

The appellant, Gregory Lavell Carson, Sr., referred herein as "the defendant," appeals as of right from two convictions of aggravated child abuse by a Rutherford County jury. The trial court imposed sentences of twenty (20) years as a Class A felony, Violent 100% Offender, in the Department of Correction. The defendant presents two appellate issues for review:

1. Whether venue was properly established thereby conferring jurisdiction upon the trial court.

2. Whether the evidence adduced at trial was sufficient to allow a rational jury to find the defendant guilty beyond a reasonable doubt.

After a review of the record in this cause, briefs of the parties and applicable law, we AFFIRM the trial court's judgment.

## FACTUAL BACKGROUND

Dr. Robert S. Humphrey, a pediatrician, testified that he has practiced pediatrics at the Murfreesboro Medical Center since 1992. Dr. Humphrey testified that his first contact with Gregory Carson, Jr., was on June 17, 1997, at the child's birth at the Middle Tennessee Medical Center. He stated that he met the parents, Alma Carson and the defendant. He stated that he next saw the child on June 20, 1997, for a follow-up visit, and the child had a good temperature with minor feeding problems. On July 7, 1997, Dr. Humphrey saw the child for a two week check-up. The child was healthy and weighed six (6) pounds, eight (8) ounces. On July 28, 1997, Dr. Humphrey saw the child for the presence of a rash, for which he prescribed a cream, Bactrobon. Dr. Humphrey stated that he was suspicious of the cause of the rash and inquired of the mother if any trauma had occurred to the child, and he was satisfied with her response. Dr. Humphrey stated that the parents missed an appointment for August 14, 1997, but brought the child in on August 26, 1997. The parents complained that the child had a fever of 102.2, was congested, was not sleeping, and was crying. Due to the temperature, Dr. Humphrey was concerned that the child had an infection. Dr. Humphrey ran several tests on the child, and the results were negative for an urinary tract infection and spinal meningitis.

Dr. Humphrey prescribed an injection of Rocphen, an antibiotic, for overnight treatment, and he wished to see the baby on August 27th. On August 27th, Dr. Humphrey

stated that the mother of the child advised him that the child cried a lot and that she noticed some swelling of his legs. Dr. Humphrey found no infection but did detect some puffiness around the child's right thigh. Dr. Humphrey ordered a chest x-ray, which revealed bilateral rib fractures appearing to be of different ages. Dr. Humphrey found four (4) rib fractures with callous formation on the child's right side, and three (3) rib fractures on the left side, one of which was recent. Dr. Humphrey testified that he informed the mother of these findings and also notified the Department of Human Services, because one does not see children with multiple fractures normally. Due to his concern over the child, Dr. Humphrey had the child transferred to Vanderbilt's Children Hospital. On August 29, 1997, Dr. Humphrey saw the child after its discharge from Vanderbilt Hospital. The child had both legs in a cast from his toes to his nipples.

Michael Smith, Criminal Investigator for the Tennessee Bureau of Investigations, testified that he was contacted by Detective Larry Nobles of the Murfreesboro Police Department to assist in the investigation of the defendant. Investigator Smith testified that he interviewed the defendant in the presence of Detective Nobles at the Murfreesboro Police Department on September 9, 1997. Mr. Smith stated that the defendant was advised of his Miranda rights and of the reasons for the interview. The defendant signed a waiver of his rights and agreed to give a taped statement. The tape was played for the benefit of the jury. Investigator Smith testified that, prior to the taped statement, he advised the defendant of the fractures sustained by the child. The defendant responded that the injuries were possibly accidental, but he did not see anyone do it intentionally. Mr. Smith stated that the defendant later changed his story, stating that he was the person responsible, but it was accidental.

Dr. Suzanne Patricia Starling, a pediatrician for Vanderbilt University Medical Center, testified that she is the Director of the Child Abuse and Neglect Program at Vanderbilt and the Medical Director for "Our Kids" program for the evaluation of cases of suspected child sexual abuse. Dr. Starling testified that she examined Gregory Carson, Jr., on August 27, 1997. She stated that she had reviewed the parent history, medical records of the child's treatment, and performed a physical examination of the child. Dr. Starling stated that the child, a two month and one week old baby, was very fussy and

3

obviously in pain. She noticed that the child would not move its legs, and, in feeling his legs, his thighs were very tense. The child was obviously hurting. Dr. Starling ordered a complete body x-ray of the child. Upon review of the x-rays, Dr. Starling found eleven (11) fractures. For the jury, Dr. Starling described two fractures on the child's thigh, one fracture in the left shinbone, one fracture in the right shinbone, three (3) fractures to the left ribs, and four (4) fractures to the right ribs. Dr. Starling opined that disease did not cause these fractures but that somebody had broken the child's bones. Dr. Starling testified that the rib fractures were two weeks old, and the fractures to the child's legs were less than a week old.

When Dr. Starling confronted the parents with her findings, both parents denied that anything happened to the child that could have caused these breaks. Dr. Starling stated that the parent's social history indicated that the parents lived in Murfreesboro, Rutherford County. The doctor testified that tossing children into the air and catching them does not cause fractures of the ribs. Also, she stated that normal diaper changing, which involves some degree of leg twisting, does not break a child's leg, especially the thigh bone. Dr. Starling opined that the child's injuries were not accidental.

Mrs. Alma Carson, mother of Greg Jr., testified that she and the defendant had been married for two (2) years but had known each other for ten (10) years. They have another child, a daughter named Jatayvia, who was born in Milwaukee, Wisconsin, on October 2, 1995. She stated that, during her pregnancy with Greg Jr., she did not receive any pre-natal care. She stated that they were financially unable to have a child and discussed an abortion but decided not to have one. She advised her husband of her pregnancy in about her fifth month. Mrs. Carson described her husband's relationship with Greg Jr. as loving and very caring. According to Mrs. Carson, her husband was not harmful or harsh with the child. She stated that he was very gentle with the child and never mistreated the child. She was of the opinion that her husband had good parenting skills.

In cross-examination, Mrs. Carson testified that she and her husband moved to Murfreesboro, Tennessee, from Milwaukee, Wisconsin, because of better job opportunities and the fact that Mr. Carson had relatives in the area. Mrs. Carson admitted that she delayed telling her husband about the pregnancy due to the uncertainty as to how her

4

husband would take it; however, he did take it well. She stated that she was working at Warnaco, and, while each of them worked, the other one would take care of the children. At this time, she testified that she and her husband were living at 1211 Hazelwood Street, Apartment J-133, Murfreesboro, Rutherford County, Tennessee. Mrs. Carson testified that her husband's mother and her sister babysat the child on occasion between June and July while visiting from Wisconsin. Mrs. Carson testified that she advised the police and representatives of the Department of Children's Services that she could not think of any reason why the child would have these injuries and that she did not do anything or handle the child in any way to cause the child's injuries.

Mrs. Cynthia Dodd, the defendant's aunt, testified that she was aware of Mrs. Carson's pregnancy and that the Carsons were going through financial problems. She stated that at one time, Mrs. Carson wanted an abortion; however the defendant was happy about having a son. She testified that the defendant would ask for advice in how to take care of the baby, as he had never done so before. She stated that she had never seen the defendant mistreat the baby.

James Nathan Carson, Sr., the defendant's brother, testified that, at the time of trial, he and his wife were foster parents to the defendant's daughter and son. Mr. Carson testified that his brother called him when the baby was born and stated that he did not know he would be a father until the day the baby was born. He stated that the defendant visits the children, and he has never seen the defendant mistreat the children. The witness asked his brother how the fractures could have happened, and the defendant stated that he did not know anything about it.

The defendant testified that he grew up in Milwaukee, Wisconsin, in a loving family. He stated that he had known his wife for ten (10) years, and they had been married two years and three months. He stated that they have two children, Jatayvia, age two, and Greg Jr. He testified that at the time of his wife's pregnancy, they were having financial problems. He found out about the pregnancy the night before his wife went into labor. The defendant testified that he was proud to have a son and that he was not angry. The defendant denied knowingly injuring or mistreating his son and stated that he loves his child. As to his statement to the police, the defendant testified that he was scared and

5

nervous. He had never been in a similar situation and thought he was doing the right thing.

The defendant stated that Agent Smith advised him that he and his wife were the most likely candidates for counseling. He testified that Agent Smith did not mention going to jail or the court but said, "[I]f you tell us, you know, what happened or you think what maybe happened, you know, we'll see that it's in your best interest for counseling." In cross-examination, the defendant admitted that a person inflicting eleven (11) fractures on the baby would have to know that they would be hurting the baby. A week before Greg Jr. was born, the defendant lost his job, but he returned to work the last week of July. He stated that he and his wife rotated caring for the children. He agreed that only two persons could have caused the injuries to the baby, namely, he or his wife. The defendant admitted that he lied to the police in saying he dropped the baby backwards or pulled the child's legs while changing a diaper. The defendant testified that he could not recall talking to someone named Paula McCullough about custody of his children and telling her about the child being in a serious accident. Also, the defendant was asked if he underwent a parenting assessment at the Rutherford County Guidance Center conducted by Dr. Harry Steuber. The defendant testified that he took the psychological tests, but the people at the Center did not show him the report and told the defendant he was doing fine.

In rebuttal testimony, Paula McCullough, Judicial Commissioner for Rutherford County, testified that she met the defendant and a relative in her office concerning the custody of the defendant's children. Ms. McCullough asked the defendant why a custody petition was being filed. The defendant responded that his child had been in a bad accident, and they suspected him although he had no idea why.

In rebuttal testimony, Dr. Harry Steuber, a clinical psychologist, testified that he is employed at the Guidance Center. Dr. Steuber stated that he determines parenting assessments or will prepare reports for parent assessments. Dr. Steuber testified that, in the Spring of 1998, he was requested to interpret the defendant's psychological tests. Dr. Steuber opined that the report was unfavorable in determining the defendant's parenting assessment.

## LEGAL ANALYSIS

In appellate issue two, the defendant contends that the evidence adduced at trial

6

is insufficient to sustain the jury's verdict beyond a reasonable doubt for two convictions of aggravated child abuse. The State disagrees.

Following a jury conviction, the initial presumption of innocence is removed from the defendant and exchanged for one of guilt, so that on appeal, the defendant had the burden of demonstrating the insufficiency of the evidence. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). It is the duty of this Court to affirm the conviction, unless the evidence adduced at trial was so deficient that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). In *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App.) *perm. app. denied* (Tenn. 1990), this Court held this rule to be applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct evidence and circumstantial evidence.

This Court does not reweigh or reevaluate the evidence, nor may we replace our inferences for those drawn by the trier of fact. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Furthermore, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992), *cert. denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993). A jury verdict accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State's theory. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn. 1983).

Child abuse occurs when any person knowingly, other than by accidental means, injures a child under eighteen (18) years of age. Tenn. Code Ann. § 39-15-401(a). A person commits the offense of aggravated child abuse who commits the offense of child abuse, and the act of abuse results in serious bodily injury or was accomplished by a deadly weapon. Tenn. Code Ann. § 39-15-402(a). The defendant concedes that the baby's injuries were serious bodily injury and that the baby is under six (6) years of age, thus, the proper offense was aggravated child abuse. However, the defendant asserts that the proof was insufficient to prove that he was the perpetrator.

The facts at trial are uncontroverted that the child sustained eleven (11) fractures to its ribs and both legs. The medical proof, especially the testimony of Dr. Starling, shows

that the injuries were not accidental and were knowingly inflicted. Dr. Starling discounted the defendant's statement that the baby's injuries to the rib happened while the child fell backwards in the defendant's arms, and the leg injuries occurred while changing diapers. The defendant and his wife were the sole caretakers of the child, and the wife maintained that she did not cause these injuries. The defendant, after initially denying he caused the baby's injuries, admitted to law enforcement officers that he caused the injuries and apologized for doing so. At trial, the defendant testified that he did not cause the child's injuries and fabricated his statement at the urging of police officers. After listening to all the witnesses at trial, the jury resolved the credibility of these witnesses in the favor of the State. We find that there is ample evidence that the defendant knowingly abused his child to the extent that the child received serious bodily injury. There is no merit to this issue.

In appellate issue number one, the defendant strongly contends that the State failed to prove venue, and, therefore, the trial court had no jurisdiction to hear the prosecution. The defendant requests that the charges be dismissed. The State argues that the proof at trial was sufficient to establish venue, and the convictions should be affirmed.

Indictment No. 43609, in two counts, alleges that between June17, 1997, and August 28, 1997, the defendant, Gregory Lavell Carson, Sr., in Rutherford County, Tennessee, did knowingly and other than by accidental means, treat a child under six (6) years of age in such a manner as to inflict serious bodily injury by fracturing the ribs of Gregory Carson, Jr., and by fracturing the right and left femur and left tibial [sic] (tibia) of Gregory Carson, Jr.

Under the Tennessee Constitution, Article 1, Section 9, and Tennessee Rules of Criminal Procedure 18, an accused is entitled to a trial in the county in which the offense was committed. *Smith v. State,* 607 S.W.2d 906, 906-07 (Tenn. Crim. App.), *perm. app. denied* (Tenn. 1980). The burden is on the prosecution to prove that the offense was committed in the county indicated in the indictment. *State v. Smith,* 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995); *Harvey v. State,* 213 Tenn. 608, 612, 376 S.W.2d 497, 498 (Tenn. 1964). Venue is a jurisdictional fact and not an element of the charged offense. *State v. Bloodsaw,* 746 S.W.2d 722, 723-24 (Tenn. Crim. App. 1987), *perm. app. denied* (Tenn. 1988). In a criminal case, venue must be proved by a preponderance of the

8

evidence. Tenn. Code Ann. § 39-11-201(e); *State v. Marbury,* 908 S.W.2d 405, 407 (Tenn. Crim. App. 1995). Slight evidence will be enough to carry the prosecution's burden of preponderance of the evidence, if the evidence is uncontradicted. *State v. Bennett,* 549 S.W.2d 949, 951 (Tenn. 1977); *Bloodsaw,* 746 S.W.2d at 723-24. This evidence may be either direct, circumstantial, or both. *Smith,* 926 S.W.2d at 269; *State v. Jeffrey Edward Pitts,* No. 01C01-9701-CC-00003, 1999 WL 144744 (Tenn. Crim. App. Mar. 18, 1999).

The question of venue is for the jury to decide. Tenn. R. Crim. P. 18(a); *State v. Hamsley,* 672 S.W.2d 437, 439 (Tenn. Crim. App.), *perm. app. denied* (Tenn. 1984). In so doing, the jury is entitled to draw reasonable inferences from the evidence. *State v. Johnson,* 673 S.W.2d 877, 882 (Tenn. Crim. App.), *perm. app. denied* (Tenn. 1984).

As authority in the State's failure to establish venue, the defendant cites *State v. Hutcherson,* 790 S.W.2d 532 (Tenn. 1990); *Daniel v. State,* 489 S.W.2d 852, 853 (Tenn. Crim. App. 1972); and *State v. Bloodsaw,* 746 S.W.2d 722 (Tenn. Crim. App. 1987). In *Daniel v. State,* this Court reversed a Bradley County jury's conviction for concealing or aiding in the concealing of stolen property for failure to establish Bradley County venue. Cigarettes, valued at twenty thousand dollars ($20,000), were stolen from a warehouse in Monroe County. The next day Daniel was seen in an automobile following a truck containing the stolen cases of cigarettes. Daniel's single fingerprint was found on a case of cigarettes. There was no proof that Daniel had exercised any control over the cigarettes in Bradley County.

In *State v. Hutcherson,* the five year old victim complained that the defendant sexually abused her while her brother was fishing at a lake. The child's mother called the Shelby County Sheriff Department about the offense. A Shelby County Deputy stated, "[B]ased upon information I was able to piece together, it was an area off North Highland, just north of Chelsea, behind the Sears complex where the warehouse is." The Supreme Court agreed with this Court that the State had failed to establish venue in Shelby County, merely because a Shelby County Deputy testified at trial.

In *State v. Bloodsaw,* the defendant was convicted of sexually abusing his two year old daughter in Hamilton County. Sergeant Mumzell Dockery of the Chattanooga Police Department testified that she went to Erlanger Children's Hospital at the request of the

Department of Human Services, with reference to a two year old girl infected with gonorrhea. Both the defendant and the child's mother were infected with gonorrhea. The defendant gave a tape recorded statement to the Chattanooga Police admitting the sexual abuse. In his taped statement, the defendant stated that the sexual conduct took place in the bedroom where he and the mother had been sleeping. At the time of his arrest, the defendant's address was 3021 Northway Drive in Chattanooga, Tennessee. The tape was presented as exhibit two to the record. Also, introduced at trial was a transcript of the taped statement, exhibit three. The transcript had a statement in the introduction that stated that "the mother of the victim is Norma Jean Fitten, same address." This was utilized by the State to connect the offense to 3021 Northway Drive. However, in the taped statement, exhibit two, the offense and victim were identified, and the examiner stated, "[T]he parent is Norma Jean Fitten, address 2509 Ocoee Street." This Court reversed the conviction, finding that the State failed to meet its burden, even by slight evidence, in proving venue.

An examination of the record reveals that at no time during the trial did the State ask the ubiquitous question, "Did these events occur in Rutherford County, Tennessee?" Had this been done, there would be no issue on appeal. However, we find from our examination of the record that there is ample evidence for the jury to find the offenses of aggravated child abuse occurred in Rutherford County.

We believe that the facts in this case are distinguishable from those cited in the defendant's authorities. The evidence before the jury was that Dr. Robert Humphrey of the Murfreesboro Medical Center had treated the child, Gregory Carson, Jr. since birth. Due to the unexplained and serious fractures sustained by this two month old baby, Dr. Humphrey found it necessary to have the child transferred to the Children's Hospital at Vanderbilt. As to the parents' residency, Dr. Starling testified that the social history revealed that the parents lived in Murfreesboro, Rutherford County. Mrs. Alma Carson, mother of the child, testified that she and her husband moved from Milwaukee, Wisconsin, to Murfreesboro, Tennessee, because his relatives lived in Murfreesboro and for better employment opportunities. When asked, Mrs. Carson testified that she and her husband lived in Apartment J-133, 1211 Hazelwood Street in Murfreesboro, Rutherford County. She

stated that her husband kept the children while she was at work, and upon her return to the apartment, her husband would be awake, and the children would be asleep. Furthermore, Special Agent Michael Smith, Tennessee Bureau of Investigations, was contacted by the Murfreesboro Police Department and was requested to assist in the investigation. The defendant testified that he underwent a parenting assessment at the Rutherford County Guidance Center. Ms. Paula McCullough, Judicial Commissioner for Rutherford County, testified in rebuttal that the defendant led her to believe that the child received an accidental injury. We find that the jury in this case was entitled to draw reasonable inferences that the defendant committed these offenses in his apartment. It is a reasonable inference that the parental care of a two old month baby would take place in the parent's home. There is no merit to this issue.

The trial court's judgment is affirmed.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:

_____
JERRY L. SMITH, JUDGE


_____
THOMAS T. WOODALL, JUDGE