IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. BILLY BIVENS**

**Direct Appeal from the Criminal Court for McMinn County**
**Nos. 96-276 and 96-277   Earle G. Murphy, Judge**

---

**No. E1999-00086-CCA-R3-CD - Decided July 14, 2000**

---

The defendant, Billy Bivens, was convicted of official misconduct and assault. On appeal, he argues that the evidence was insufficient to sustain his convictions; that the trial court erred by failing to require the state to elect the offenses for which it sought conviction; that the jury delivered inconsistent verdicts; and that the trial court imposed an excessive sentence. Because the jury was erroneously instructed on assault as a lesser included offense of sexual battery, we reverse the assault conviction. The conviction and sentence for official misconduct are affirmed.

**Tenn. R. App. P. 3; Judgment and Sentence of the Trial Court Affirmed in Part and Reversed in Part.**

WADE, P.J., delivered the opinion of the court, in which SMITH and WITT, JJ., joined.

Donald B. Reid, Athens, Tennessee, for the appellant, Billy Bivens.

Paul G. Summers, Attorney General and Reporter, Michael J. Fahey and Clinton J. Morgan, Assistant Attorneys General, Richard Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Billy Bivens, indicted on charges of official misconduct and sexual battery, was convicted of official misconduct and misdemeanor assault. The trial court sentenced the defendant to two years of probation following jail service of 30 days for the official misconduct conviction. A concurrent sentence of 30 days in jail was imposed for the assault conviction. The trial court also ordered that the defendant pay restitution to the victim in the amount of $96.00.

In this appeal of right, the defendant presents the following issues for review:

(I) whether the evidence was sufficient to support his convictions;

(II) whether the trial court erred by failing to require the state to elect the specific instances for which it sought conviction;

(III) whether the trial court improperly accepted inconsistent verdicts; and

(IV) whether the trial court imposed an excessive sentence by requiring the defendant to serve thirty days in jail.

We affirm the official misconduct conviction and sentence. Because, however, the defendant was improperly convicted of assault, we reverse that conviction and dismiss.

On March 16, 1996, Special Agent T.J. Jordan of the TBI began an investigation of alleged sexual misconduct within the McMinn County Jail. As a result of the investigation, five jail employees, including the defendant, were charged with crimes. Of the other four individuals under investigation, one was cleared, one was not indicted by the grand jury, and two pled guilty to official misconduct.

The evidence offered at the trial of the defendant established that in July of 1995, the victim, Lisa Rogers, was serving a six-month jail term in the McMinn County Justice Center. The victim testified that during her incarceration, the defendant, a corrections officer with the sheriff's department, frequently entered her cell and fondled her breasts and vaginal area. The victim testified that the defendant often asked her to expose her breasts and vagina and that, on three occasions, the defendant masturbated in her presence. The victim stated that the defendant often made threatening remarks, including threats to revoke her visitation privileges if she did not comply with his sexual requests. According to the victim, the defendant improperly touched or rubbed her as often as five or six times each night over the course of her six-month period of incarceration. She testified that she always asked him to stop and that she wrote several letters asking to speak with the sheriff about the incidents. The victim stated that she told "Benjie," a guard, and "Becky," the jail nurse, that she needed to speak with the sheriff, but that no one ever responded to her requests. The victim acknowledged that she had known the defendant since 1987 and that she had been involved in a consensual sexual relationship with him several years prior to her incarceration. She testified that during her time in jail, she and the defendant engaged in neither sexual intercourse nor oral sex.

Brad Lane, a deputy with the McMinn County Sheriff's Department, testified that supervisors instructed the male jailers not to linger in the female sections of the jail. He confirmed that the defendant spent "a little longer than he should have" in the section where the victim was housed. Lane recalled that the defendant explained that the victim had been his friend since childhood and that they often talked. On cross-examination, Deputy Lane acknowledged that he never saw the defendant engaging in inappropriate activity with an inmate.

Former officer Michael McCardle, who pled guilty to official misconduct, testified that he saw the defendant spend "excessive time" in the female section of the jail. He stated that he witnessed female inmates raise their shirts and dance for groups of officers, including the defendant. On cross examination, McCardle conceded that he did not begin working in the jail until January, 1996, the same month that the victim was released from jail and some four months after the incidents

-2-

alleged in the indictment. He also conceded that he never saw the defendant have sexual contact with an inmate. He testified that, in his view, it would not have been possible to conceal a non-consensual sexual encounter from others because of the openness of the cells.

Gregory Mason, a former officer at the justice center who also pled guilty to official misconduct, testified that he noticed the defendant spent an unusual amount of time in the female section of the jail. He stated that he saw the defendant "hanging around" the victim's cell several times for as long as 45 minutes or an hour. He acknowledged that while he never witnessed any contact between the defendant and the victim, no one had ever witnessed his own sexual contact with a different female inmate.

Parris Ferby testified that she occupied the cell next to the victim from September of 1994 until February of 1996. She recalled that the walls between the cells were approximately four feet tall and that the cells contained no doors. According to Ms. Ferby, it was easy to hear people talking in the cell next to her own and she testified that she saw the defendant speak to the victim at least two times at night. She remembered that on at least one occasion, she saw the defendant enter the victim's cell. Ms. Ferby testified that she neither witnessed any sexual contact between the defendant and the victim nor heard the defendant say anything of a sexual nature to the victim.

Terry Frazier, who was incarcerated in the McMinn County Judicial Center for one year, testified that she observed the defendant enter the victim's cell late at night and remembered that he would stay there "for hours." She stated that the victim acknowledged that she was having sex with the defendant. Ms. Frazier also claimed to have witnessed the victim performing oral sex on the defendant.

Kimberly Arnwine, who occupied a cell next to the victim for three months, recalled that she often saw the defendant in the victim's cell late at night and in the middle of the day. She testified that she heard noises that sounded like sexual intercourse coming from the victim's cell. Ms. Arnwine stated that on one occasion she observed the victim kneeling in front of the defendant.

Another inmate, Tracey Wilkerson, testified for the state. She recalled that the defendant often stood near the victim's cell. Ms. Wilkerson described the defendant as a "good jailer" who "looked after all of us, female and male." She stated that she never observed the defendant in the victim's cell and never saw him touch the victim.

Ruby Free, an inmate who occupied a cell near that of the victim, also testified for the state. She recalled that the victim and the defendant "talked a lot." Ms. Free stated that she frequently heard female "moaning and groaning" while the defendant was in the victim's cell. She conceded that she never saw the defendant actually enter the victim's cell and acknowledged that she was not incarcerated during the month of September, the period covered by the indictment. When asked if she ever saw the defendant touch the victim or heard him make inappropriate comments to the victim, Ms. Free stated, "Mr Bivens is a decent man . . . . In my book he is. He had respect for us."

The defense called Rebecca ("Becky") Eaton, the jail paramedic, and Benjamin ("Benjie") Jorgenson, a jailer. Each contradicted the victim's claim that she had asked for help, asserting that she had never made any complaints. They testified that they were unaware of any request by the victim to speak with the sheriff. Kenny Coleman, the jail administrator, confirmed that the defendant's personnel file did not contain any complaints during the period of the victim's confinement.

At trial, the defendant denied having spent any more time with the victim than he did with other inmates. He claimed that he never threatened the victim and denied having any sexual contact with her during her period of incarceration.

I

The defendant was indicted on charges of sexual battery and official misconduct, but was convicted of assault and official misconduct. Although the issue has not been raised by either the defendant or the state, we conclude that the defendant's conviction for assault was improper on a plain error basis. Tenn. R. Crim. P. 52(b). Because assault is not a lesser-included offense of sexual battery, we must reverse the defendant's conviction for assault.

Recently, in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court revised the standards for the determination of lesser included offenses. Our high court confirmed in a companion case, State v. Dominy, 6 S.W.3d 472 (Tenn. 1999), that it had overruled portions of the holding in State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), in which it had established a distinction between lesser grades or classes of offenses and lesser included offenses. In Burns, the court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:

An offense if a lesser included offense if:

(a)     all of its statutory elements are included within the statutory elements of the offense charged; or

(b)     it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1)     a different mental state indicating a lesser kind of culpability; and/or

(2)     a less serious harm or risk of harm to the same person, property or public interest; or

(c)     it consists of

> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
>
> (3) solicitation to commit the offense charged or an offense the otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67.

Here, the defendant was indicted for sexual battery, but was convicted of assault. Sexual battery is defined as

> [U]nlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>
> (1) Force or coercion is used to accomplish the act;
>
> (2) The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent;
>
> (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
>
> (4) The sexual contact is accomplished by fraud.

Tenn. Code Ann. § 39-13-505.

By comparison, the offense of assault is defined as follows:

A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a).

Prior to the release of State v. Burns, our supreme court had determined that assault was neither a lesser grade offense nor a lesser included offense of sexual battery. State v. Cleveland, 959 S.W.2d 548 (Tenn. 1997); see also State v. Tina Swindle, No. 01C01-9805-CR-00202 (Tenn. Crim. App. at Nashville, Apr. 30, 1999) ( pre-Burns opinion holding that assault is not a lesser included offense of aggravated sexual battery); State v. Edward L. Davis, No. 02C01-9712-CC-00480 (Tenn. Crim. App. at Jackson, Mar. 19, 1999) (pre-Burns opinion holding that assault is not a lesser included offense of sexual battery). In our view, application of the lesser included offense test articulated in Burns does not require a different conclusion. A sexual battery conviction requires proof of unlawful sexual contact accomplished (1) through force or coercion, (2) without the consent of the victim, (3) notwithstanding the victim's mental defect, mental incapacitation, or physical helplessness, or (4) by fraud. See Tenn. Code Ann. § 39-13-505. An assault conviction, on the other hand, requires proof that the defendant (1) intentionally, knowingly, or recklessly inflicted bodily injury, (2) intentionally or knowingly caused fear of bodily injury, or (3) intentionally or knowingly caused extremely offensive physical contact with another. See Tenn. Code Ann. § 39-13-101(a). Each form of assault, including the last form, which requires intentional or knowing conduct, contains at least one element that is not included within the statutory elements of sexual battery. Burns, 6 S.W.3d at 466. Likewise, the divergence of the statutory elements of assault and the statutory elements of sexual battery does not arise as a result of assault requiring a lesser degree of culpability or a less serious harm or risk of harm. Id. at 466-67. Nor does assault consist of facilitation of, attempt to commit, or solicitation to commit sexual battery. Id. at 467. As such, assault is not a lesser included offense of sexual battery.

II

In support of his contention that the evidence was insufficient to support the offense of official misconduct, the defendant points to his record of service as an officer and argues that the prosecution witnesses were not credible. He asserts that the state was unable to present a witness who could provide corroboration to the testimony of the victim.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). In a criminal case, a conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the

finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). A guilty verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in testimony in favor of the state's theory. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt upon appeal. State v. Grace, 493 S.W.2d 474 (Tenn. 1973).

Official misconduct is defined as follows:

(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:

(1) Commits an act relating to the servant's office or employment that constitutes an unauthorized exercise of official power;

(2) Commits an act under color of office or employment that exceeds the servant's official power;

* * *

(4) Violates a law relating to the public servant's office or employment; or

(5) Receives any benefit not otherwise authorized by law.

Tenn. Code Ann. § 39-16-402.

Here, the jury chose to accredit the testimony of the prosecution witnesses and to reject the defense theory. The victim, Lisa Rogers, testified that the defendant entered her cell and touched her breasts and vaginal area despite her protests. Furthermore, the defendant was employed as a correctional officer during the commission of the offense. There was, therefore, evidence of each element of the offense of official misconduct. Tenn. Code Ann. § 39-16-402. That some prosecution witnesses had criminal records does not render the evidence insufficient. Moreover, the fact that the defendant is a veteran police officer does not necessarily entitle him to greater credibility.

Additionally, the victim's testimony is sufficient to establish the convicted offense. Had she been an accomplice, the defendant's argument regarding the lack of corroboration of the victim's account might have merit. A conviction cannot be based solely on the uncorroborated testimony of an accomplice. State v. Henley, 774 S.W.2d 908, 913 (Tenn. 1989); Prince v. State, 529 S.W.2d 729, 732 (Tenn. Crim. App. 1975). An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of the crime. Conner v. State, 531 S.W.2d 119 (Tenn. Crim. App. 1975). When the facts are clear and undisputed concerning a witness' participation in the crime, whether the witness is an accomplice is a question of law for the court. When the facts are in dispute or susceptible to different inferences, it is then

a question of fact for the jury's determination. Conner v. State, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975). In this case, it was the responsibility of the jury to determine whether the victim consented to the defendant's sexual advances, thereby becoming an accomplice and requiring corroborative evidence. See State v. McKnight, 900 S.W.2d 36 (Tenn Crim. App. 1994) (holding that the victim's failure to resist the defendant's advances made him an accomplice and served as a defense to assault charges). Because the defendant failed to include in the record a transcript of the jury charge, we cannot determine whether the trial court instructed the jury as to the accomplice issue. Of course, the defendant's theory was that the sexual advances never occurred. In our view, the jury acted within its prerogative in accrediting the victim's testimony and rejecting the defense theory. Her testimony, therefore, did not require corroboration. A rational trier of fact could have found the essential elements of official misconduct beyond a reasonable doubt. The evidence of the defendant's guilt more than satisfies the standard prescribed by Tenn. R. App. P. 13(e).

III

Next, the defendant argues that the trial court erred by failing to require the state to elect the specific instances for which it sought conviction. He contends that the state failed to present evidence of "specific dates during which the alleged sexual assaults occurred other than the dates of the accuser's incarceration which spanned a six-month period." It is the state's position that the defendant has waived the issue due to an incomplete record.

In Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973), our supreme court held that it is "the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect the particular offense of carnal knowledge upon which it would rely for conviction, and to properly instruct the jury so that the verdict of every juror would be united on the one offense." The duty to require election exists on the part of the trial court even in the absence of a specific request by the defendant. Id. The Burlison court enumerated three reasons underlying the election requirement:

> First, to enable the defendant to prepare for and make his defense to
> the specific charge; second, to protect him from double jeopardy by
> individualization of the issue; and third, so that the jury's verdict may
> not be a matter of choice between offenses, some jurors convicting on
> one offense and others, another.

Id. at 803. In State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993), our supreme court reaffirmed that the election requirement is "fundamental, immediately touching on the constitutional rights of an accused . . . ."

In this case, the indictment charging the defendant with official misconduct and sexual battery stated as follows:

> BILLY BIVENS on or about September 1995, in McMinn County,
> Tennessee, and before the finding of this indictment, did unlawfully
> and knowingly with intent to obtain a benefit or to harm another

-8-

while on duty as McMinn County Sheriff's deputy jailer, have sexual contact with Lisa Rogers, an inmate in McMinn County Jail, by rubbing her vagina, breasts, asking her to expose her breast and vagina and masturbating in front of Lisa Rogers, in violation of T.C.A. 39-16-402, all of which is against the peace and dignity of the State of Tennessee.

COUNT TWO

BILLY BIVENS on or about September, 1995, in McMinn County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally, knowingly, recklessly, with force or coercion engage in sexual contact with Lisa Rogers, in violation of T.C.A. 39-13-505, all of which is against the peace and dignity of the State of Tennessee.

The record does not contain the arguments of counsel or the trial court's instructions to the jury. Any election made by the prosecution would have been made during closing argument and any directive by the trial court would have been made in the instructions to the jury. It is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn. R. App. P. 24(b); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). When the record is incomplete and does not contain information relevant to a particular issue, this court may not make a ruling and must presume the correctness of the trial court. See State v. Miller 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987); State v. Cooper, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987). The absence of a complete record precludes a full and complete review. The issue, therefore, has been waived.

IV

Next, the defendant argues that the jury delivered inconsistent verdicts. He predicates this argument on the fact that the jury found him not guilty of sexual battery, yet returned a guilty verdict for official misconduct. Essentially, he argues that because the indictment for official misconduct charged the defendant with having inappropriate sexual contact with the victim and, because he was found to be not guilty of sexual battery, he could not have been found guilty of official misconduct.

The defendant has cited no authority in support of his argument that he is entitled to acquittal based upon inconsistency of the verdicts. Rather, he argues that "justice demands that the verdicts of the jury be consistent." An issue may be treated as waived for failure to provide citation to authority. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); State v. Dakin, 614 S.W.2d 812, 814 (Tenn. Crim. App. 1980).

More importantly, however, consistency in verdicts for multiple count indictments

is unnecessary. Each count is regarded as a separate indictment. Wiggins v. State, 498 S.W.2d 92, 93-94 (Tenn. 1973); State v. Gennoe, 851 S.W.2d 833, 836 (Tenn. Crim. App. 1992); State v. Hicks, 835 S.W.2d 32, 36 (Tenn. Crim. App. 1992). If satisfied that the proof established guilt of the offense upon which the convictions were returned, courts will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning. Wiggins, 498 S.W.2d at 94; State v. Bloodsaw, 746 S.W.2d 722, 726 (Tenn. Crim. App. 1987); see State v. Glenn David Jones, No. 03C01-9302-CR-00057 (Tenn. Crim. App., at Knoxville, Nov. 22, 1994); State v. Rick A. Eaton, No. 03C01-9202-CR-00044 (Tenn. Crim. App., at Knoxville, Dec. 29, 1992).

V

As his final issue, the defendant argues that the trial court improperly sentenced him to a 30-day period of confinement. He contends that the sentence imposed was excessive and that he should have been granted a suspended sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim App. 1987).

In calculating the sentence for felony convictions committed before July 1, 1995, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (1990) (amended July 1, 1995, to provide that the presumptive sentence for Class A felony as the midpoint in the range). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. Id. The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence for each conviction is eight years or less. Tenn. Code Ann. § 40-35-303(a), (b). Among the factors applicable to an application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). A sentence of split confinement involves the grant of probation after the partial service of a sentence. Tenn. Code Ann. § 40-35-306. It may include a jail or workhouse sentence of up to one year with the probationary term to extend for any period thereafter up to the statutory maximum for the offense. Id.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> (7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991). The presumption of correctness is, however, "conditioned upon the affirmative showing in the record that the trial court considered sentencing principles and relevant facts and circumstances." Ashby, 823 S.W.2d at 169. The trial court must place on the record the reasons for the sentence. State v. Jones, 883 S.W.2d 597 (Tenn. 1994).

In this case, the trial court observed as follows:

Having considered the presentence report, having considered the statements of all the parties concerned, the witness' testimony, the court's going to sentence Mr. Bivens to 30 days in the McMinn County Jail, followed by probation for a period of two years . . . . I sentence him to 30 days on the assault count to run concurrent with the other sentence.

Because the trial court failed to specify for the record the rationale for the sentence imposed, our review of the defendant's sentence for official misconduct, a felony, must be de novo without a presumption of correctness.

Official misconduct, a Class E felony, includes a sentence range of one to two years. Tenn. Code Ann. § 40-35-112(a)(5). Because the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, that enhancement factor would apply to the official misconduct offense. Tenn. Code Ann. § 40-35-114(7). The enhancement factor relating to abuse of a position of public trust is not applicable to the offense of official misconduct because it is an element of that offense. See State v. David Keith Lane, No. 03C01-9607-CC-00259 (Tenn. Crim. App., at Knoxville, June 18, 1997), aff'd 3 S.W.3d 456 (Tenn. 1999). In mitigation of the offenses, the defendant has no prior record of criminal activity and has served in a law enforcement capacity for more than 20 years.

In our view, a two year sentence of probation upon completion of 30 days incarceration for the offense of official misconduct was warranted. The defendant, a corrections officer, used his position to take advantage of a victim who had little recourse and no means of protecting herself from his sexual advances. Because his actions were also motivated by his desire for "pleasure or excitement," Tenn. Code Ann. § 40-35-114(7), that factor should be given significant weight. A period of confinement is necessary to avoid depreciating the seriousness of the offense of official misconduct.

Accordingly, the judgment of the trial court is affirmed.