# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 21, 2010 Session

## HAROLD DEAN McDANIEL v. KIMBERLY RUTH McDANIEL

**Appeal from the Circuit Court for Hamilton County**
**No. 07D183      W. Neil Thomas, III, Judge**

_____

**No. E2009-00447-COA-R3-CV - FILED MAY 27, 2010**

_____

In this divorce case, Kimberly Ruth McDaniel ("Mother") appeals raising numerous issues, including a challenge to the admission of a tape recorded conversation between Mother and one of her children from a previous marriage. Neither party to this telephone conversation knew that it was being recorded. Admission of the tape recorded conversation damaged Mother's credibility because, prior to its admission, Mother expressly denied making numerous comments contained in this recording. In addition, Mother's father, Homer Jerrolds ("Jerrolds") appeals the Trial Court's finding that he was in criminal contempt for threatening the guardian ad litem outside the courtroom after the Trial Court announced its judgment from the bench. Jerrolds claims he did not receive proper notice pursuant to Tenn. R. Crim. P. 42. We affirm the Trial Court's award of a divorce to Father based on Mother's admitted affair. However, we conclude that the tape recorded conversation should not have been admitted and that its admission was not harmless error. We further conclude that Jerrolds did not receive proper notice pursuant to Tenn. R. Crim. P. 42. The judgment of the Trial Court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this Opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

William G. Schwall, Chattanooga, Tennessee, for the Appellants, Kimberly Ruth McDaniel and Homer Jerrolds.

Robert J. Batson, Jr., Chattanooga, Tennessee, for the Appellee, Harold Dean McDaniel.

# OPINION

## Background

This very contentious divorce case was filed by Father in January 2007. As grounds for divorce, Father alleged that Mother was guilty of inappropriate marital conduct or, in the alternative, that irreconcilable differences had arisen between the parties. The parties have three children, two sons currently ages 7 and 12, and a daughter age 10. Mother has three children from a previous marriage.

When the complaint was filed, Father obtained an ex parte restraining order against Mother prohibiting her from coming around or contacting Father or the children. Mother immediately obtained a hearing on the ex parte restraining order. Following that hearing, the Trial Court entered a temporary restraining order prohibiting the parties from contacting each other unless it was necessary for the care of the children. Mother was allowed to have unsupervised visitation on her days off, but no overnight visitation was allowed. This set the tone for the remainder of the proceedings.

Mother answered the complaint and denied any inappropriate marital conduct by her. Mother also filed a counterclaim alleging that Father was guilty of adultery and cruel and inhuman treatment. Alternatively, Mother claimed that irreconcilable differences had arisen between the parties.

The trial took several days. During the trial, Mother was asked a series of questions about whether she had made certain comments to her son, Kris[1], during a telephone conversation that occurred on September 25, 2007. Specifically, Mother was asked if, during that conversation, she (1) called her ex-husband a specific vulgar name; (2) called Father a specific vulgar name; (3) told Kris that she was trying to get Father thrown in jail; (4) told Kris that having Father thrown in jail was about the "only hope" she had for winning the divorce case; (5) told Kris that the Judge did not believe that she was telling the truth about when she had an affair; and (6) told Kris that her "last resort" was to kill Father and exactly how she would kill him. Mother even denied talking at all about the divorce case in this telephone conversation with Kris. When asked about there being a transcript of that conversation establishing that she did, in fact, make the above statements, Mother responded "It's all a lie."

---

[1] Kris is Mother's son from a previous marriage. At the time of this conversation, Kris was fourteen years old and living with his father and stepmother, Robert and Patricia Hilton (the "Hiltons").

It, however, was not all a lie. Mother's conversation with Kris had been recorded and that tape was offered as evidence by Father. Mother had in fact made all of the above statements, and more.[2] Not surprisingly, a sharp disagreement arose over the admissibility of this tape recording. How the conversation came to be recorded thus became relevant.

As noted, Kris was living with his father and stepmother, the Hiltons. The Hiltons operate a real estate rental business and after having received several calls from irate renters, they installed a tape recording machine on their telephone line that recorded *all* telephone calls, assuming the machine was turned on. Neither Kris nor Mother knew that their conversation was being recorded. Patricia Hilton testified that although she did not specifically intend to tape that particular conversation, she did hear Kris on the phone that day, and the recording machine was turned on. When she later noticed that a conversation had been recorded, she listened to part of the recording which she described as "very alarming." She then listened to the entire conversation, made a copy of it, and gave the copy to Father.

The Trial Court determined that the recording of the conversation was not intentional, but rather inadvertent, and therefore not in violation of any federal or state wiretapping laws. According to the Trial Court:

> I have had an opportunity to look at T.C.A. 39-13-601(a)(1), (A) and (B), and considering the testimony of the witness that I've heard, I don't believe that – I think there are two words that are critical in this statute. One is intentionally and one is intercept. And I don't believe under the circumstances of this case there has either been an intentional interception or an interception, because I think that the, the recording was made as an integral part of this phone system. I think if you reduce the intent of the legislature to its simplest form, it reduces it to one word. Bugging. And what they wanted to prohibit was bugging. And I don't think we have a bugging situation here. It was used for the purpose of the business to record incoming and outgoing calls in their business of landlord and tenants. . . . So consequently I, I don't believe there was an illegal interception within the meaning of the statute.

[2] There were other statements Mother made to Kris that she originally denied making at trial. We have not set forth every statement that Mother denied making but which actually was made and contained on the tape recording.

Following the trial, the Trial Court made its initial rulings from the bench. The Trial Court stated, among other things, that:

> I'm granting [Father] the divorce based upon the grounds of inappropriate marital conduct. . . . I will say to both parents . . . I'm not normally . . . a stern judge, but both parents in this case have got to treat the children like children. [It is difficult enough being a child] without two warring parents. Needless to say, if I receive petitions for contempt in the future based upon parental conduct, I'm not going to be this nice.

> I'm going to designate [Father] as the primary residential parent. I am, however, going to give [Mother] substantial residential time. . . .

> I do have a great deal of problems with the credibility of [Mother] in this case on numerous occasions. At one point in time in the telephone conversations with Kris, Kris said, you know, mom, stop joking. And I thought that's what was going on at the time. But I have a specific recollection she said no, I'm not joking and this is the way it's going to happen.

> Under those circumstances and under the other circumstances of this case I simply think that [Father] is the person to be primary residential parent.

Thereafter, the Trial Court entered a Final Decree of Divorce which provides, in relevant part, as follows:

> From the testimony of the witnesses heard in open court and the entire record as a whole, the court is of the opinion that [Father] is entitled to an absolute divorce from [Mother] on the grounds of inappropriate marital conduct in violation of T.C.A. § 36-1-101 (11), and further that [Father] should be the primary residential parent of the parties' three minor children. . . . [T]he court adopts and the memorandum opinion of the court is attached hereto and marked as Exhibit A. . . .

The Trial Court set forth Mother's co-parenting time and ordered the parties and their children to attend counseling. The Court also distributed the marital property,

-4-

determined Mother's child support payment, and set forth a schedule for her to pay child support arrearages. Both parties submitted requests for payment of attorney fees. The Trial Court eventually ordered Mother to pay $25,000 of Father's attorney fees, based primarily on a finding that Mother had made several unfounded allegations of sexual abuse against Father.

As stated previously, Homer Jerrolds is Mother's father. While this litigation was pending, the Trial Court appointed a guardian ad litem on the children's behalf. When the trial was over and after the Trial Court had made its initial rulings from the bench, Jerrolds allegedly confronted the guardian ad litem in a very threatening manner outside of the courtroom. According to the guardian ad litem, as she was leaving the courtroom:

> As soon as I passed the double doors, I turn around and Mr. Jerrolds approached me. He was visibly very angry and very upset. He got in my face. . . . He started screaming and hollering and running his mouth very rapidly and said I want to know what in the hell you had to say to that Judge. . . . [H]e cursed me like a sailor and . . . terrified me. I was very much afraid of what his actions were going to be.[3]

The guardian ad litem informed the Trial Court as to what allegedly happened, and the Trial Court issued a show cause order. The show cause order required Jerrolds to show cause "why he should not be held in contempt of court for intimidating the guardian *ad litem* appointed in this case . . . ." The show cause order does not state whether the contempt proceedings involved civil or criminal contempt. At the show cause hearing, the Trial Court informed Jerrolds that the proceedings were for criminal contempt. Following the hearing, the Trial Court found Jerrolds in criminal contempt and sentenced him to ten days in jail, "suspended upon Mr. Jerrold's future good behavior." The Trial Court also stated that the ten days would be served in addition to any new sentence if there was any future finding of contempt on his part.

---

[3] One of the issues on appeal is whether the Trial Court erred when it failed to swear the guardian ad litem before her testimony at the show cause hearing. When asked if the guardian was going to be sworn-in, the Trial Court stated that was not necessary because all court officers are under oath. We need not decide whether the Trial Court erred in this regard because, on remand, the Trial Court is instructed to swear all witnesses, regardless of whether they are court officers.

Mother and Jerrolds appeal raising numerous issues.[4] The issues we find determinative are whether the Trial Court erred when it admitted the tape recording of the conversation between Mother and Kris, and whether Jerrolds received proper notice pursuant to Tenn. R. Crim. P. 42 that the proceedings involved criminal contempt.

### Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Tenn. Code Ann. § 39-13-601(a)(1) (2006) provides, in relevant part, as follows:

> **Wiretapping and electronic surveillance – Prohibited acts – Exceptions. –** (a)(1) Except as otherwise specifically provided in §§ 39-13-601 - 39-13-603 and title 40, chapter 6, part 3, a person commits an offense who:
>
> (A) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> (B) Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:
>
> > (i) The device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
> >
> > (ii) The device transmits communications by radio, or interferes with the transmission of the communication;

---

[4] The appeals by Mother and Jerrolds initially were separate appeals, but we entered an order combining the two cases.

(C) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection (a); or

(D) Intentionally uses, or endeavors to use, the contents of any wire, oral or electronic communication, knowing or having reason to know, that the information was obtained through the interception of a wire, oral or electronic communication in violation of this subsection (a).

Tenn. Code Ann. § 39-13-601(a)(1) (2006).

The courts interpreting the Tennessee statute and/or its federal counterpart generally are in agreement that there is no violation of either state or federal law if one party to a conversation consents to the recording. *See*, *e.g.*, *State v. Mosher*, 755 S.W.2d 464, 467 (Tenn. Crim. App. 1988) ("So long as one of the participants to an electronically recorded conversation consents to the procedure, there exists no constitutional infringement."). *See also Robinson v. Fulliton*, 140 S.W.3d 312 (Tenn. Ct. App. 2003) (involving unlawful recording conversation by a husband of a conversation between his wife and her brother when neither party to the conversation was aware it was being recorded). This conclusion is further supported by Tenn. Code Ann. § 40-6-302(b) which states:

(b) In carrying out illegal activities, criminals often make extensive use of wire, oral and electronic communications. The lawful interception of these communications is an indispensable aid to investigative and law enforcement officials in obtaining evidence of illegal activities. Likewise, it is necessary for the general assembly to safeguard the privacy of innocent persons. Through this part and §§ 39-13-601 - 39-13-603, the general assembly seeks to prohibit the unauthorized interception of wire, oral and electronic communications and to prohibit the use of illegally obtained wire, oral and electronic communications as evidence in courts and administrative proceedings. *The interception of wire, oral or electronic communications, therefore, when no party to the communications has consented to the interception, should be allowed only under compelling circumstances when authorized and supervised by a court of*

*competent jurisdiction and upon a finding of probable cause.* Court authorization and supervision ensures that the interception is made only in narrowly defined circumstances and that the information obtained will not be misused. The privacy rights of Tennessee citizens are further protected by limiting the interception of wire, oral, and electronic communications to certain major types of felonies under the Tennessee Code Annotated.

Tenn. Code Ann. § 40-6-302(b) (2006) (emphasis added).

Returning to the present case, the Tennessee wiretapping act certainly does not prohibit the Hiltons from recording any and all incoming messages. Likewise, the Tennessee statutes do not prohibit the recording of a conversation when one of the parties to that conversation consents to such recording. The relevant Tennessee statutes, however, do prohibit the intentional taping of a conversation when neither party to that conversation consents to the recording, which is what happened when the conversation between Mother and Kris was intercepted and recorded.

Even though the Hiltons may not have intended to record that specific conversation, by using the recording device, they intended to record all conversations, which would include the conversation at issue in this case.[5] Further, we find it relevant that Patricia Hilton testified that she heard Kris on the telephone talking to Mother, and Patricia Hilton knew that the recording machine was turned on. Despite this knowledge, Patricia Hilton took no steps to stop the recording of that conversation or inform Mother or Kris that their conversation was being recorded. We find that the evidence preponderates against the Trial Court's finding that this recording was not an intentional interception, and therefore, hold that it was error to admit this recording.

Father argues that even if the recording should not have been admitted, its admission nevertheless was harmless error because there were so many other times that Mother lied that her credibility was ruined regardless of whether the tape recording was admitted. We agree that there were other instances where Mother's credibility was damaged. As set forth previously, when concluding that Mother's credibility was lacking, the Trial Court stated there were several times Mother's credibility was implicated. However, the only

---

[5] Father does not argue that the exception at the end of Tenn. Code Ann. § 40-6-302(b) pertaining to certain major felonies applies in this case. In addition, because we conclude that the recording of the conversation between Mother and Kris violated Tennessee law, we need not decide if federal law also was violated.

specific instance actually discussed by the Trial Court involved the recorded conversation. Specifically, the Trial Court stated:

> I do have a great deal of problems with the credibility of [Mother] in this case on numerous occasions. At one point in time in the telephone conversations with Kris, Kris said, you know, mom, stop joking. And I thought that's what was going on at the time. But I have a specific recollection she said no, I'm not joking and this is the way it's going to happen.

Because the telephone conversation was the only event specifically discussed by the Trial Court when discussing Mother's lack of credibility, we cannot conclude that the improper admission of the recorded conversation was harmless. We, therefore, vacate the judgment of the Trial Court and remand this case for a new trial.

Because Mother admitted that she had an adulterous affair during the marriage, we affirm the Trial Court's granting of a divorce to Father based on Mother's inappropriate marital conduct. All other matters between Father and Mother are remanded for a new trial. The residential parenting schedule and child support payments established by the Trial Court in its final judgment shall remain in effect pending further orders of the Trial Court.

The next issue is Jerrold's claim that the Trial Court's finding that he was in criminal contempt must be vacated because he did not receive proper notice pursuant to Rule 42 of the Tennessee Rules of Criminal Procedure. In *Dockery v. Dockery*, No. E2009-01059-COA-R3-CV, 2009 WL 3486662 (Tenn. Ct. App. Oct. 29, 2009), we concluded that the trial court erred when it announced at the beginning of a criminal contempt hearing that the wife would be allowed to pursue additional criminal contempt charges against the husband. We held that "[s]imply announcing at the beginning of trial that 17 additional counts of criminal contempt were going to be pursued is woefully insufficient to comply with the notice requirements of Tenn. R. Crim P. 42."[6] *Id*., at *5. In reaching this conclusion, we stated:

> In *Moody v. Hutchison*, 159 S.W.3d 15 (Tenn. Ct. App. 2004) we stated:

---

[6] While we concluded in *Dockery* that the trial court erred when it allowed the wife to pursue claims of criminal contempt where proper Rule 42 notice had not been given, we ultimately concluded that such error was harmless in that case because the husband was found not guilty of those additional counts. *Dockery*, 2009 WL 3486662, at * 5.

-9-

A charge of criminal contempt is somewhat peculiar because such a charge encompasses aspects of both criminal law and civil law. In a criminal contempt case, many of the constitutional protections afforded a criminal defendant must be observed. For example, as discussed above, guilt must be proven beyond a reasonable doubt. *See Shiflet v. State*, 217 Tenn. 690, 400 S.W.2d 542 (Tenn. 1966). In *State v. Wood*, 91 S.W.3d 769 (Tenn. Ct. App. 2002), this Court noted that criminal contempt was "enough of a crime" for the double jeopardy provisions in the federal and state constitutions to apply. *Id*. at 773 (citing *Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000)). On the other hand, criminal contempt is "not enough of a crime" to require initiation by an indictment or presentment, and there is no right to a trial by jury. *State v. Wood*, 91 S.W.3d at 773. *Case law is clear, however, that criminal contempt is "enough of a crime" to require proper notice.*

*Moody*, 159 S.W.3d at 27 (emphasis added).

The notice to which Husband was entitled must conform with Tenn. R. Crim. P. 42, which provides in pertinent part as follows:

**Rule 42. Criminal Contempt.** – (a) Summary Disposition. – A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt. The contempt order shall recite the facts, be signed by the judge, and entered in the record.

(b) Disposition on Notice and Hearing. A criminal contempt shall be prosecuted on notice, except as provided in subdivision (a) of this rule.

-10-

(1) Content of Notice. The criminal contempt notice shall:

(A) state the time and place of the hearing;

(B) allow the defendant a reasonable time to prepare a defense; and

(C) state the essential facts constituting the criminal contempt charged and describe it as such.

(2) Form of Notice. The judge shall give the notice orally in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by a show cause or arrest order.

*Dockery*, 2009 WL 3486662, at * 4.

On appeal, Father never argues that Jerrolds received proper notice. Instead, he briefly argues that there was sufficient proof with which to find Jerrolds guilty of criminal contempt. Father fails to point us to anywhere in the voluminous record establishing that Jerrolds received proper notice pursuant to Tenn. R. Crim. P. 42.

Our independent review of the record supports Jerrolds' claim that he first was apprised of the fact that the proceedings involved criminal contempt at the beginning of the show cause hearing. Specifically, the first comments at the hearing were from the Trial Court stating: "Let me preliminarily say that, Mr. Jerrolds, this is a criminal contempt hearing. You're entitled to counsel. . . ." This is not sufficient notice under Rule 42. Accordingly, we vacate the finding of criminal contempt against Jerrolds. On remand, the Trial Court is instructed to comply with Rule 42 prior to any new hearing on the criminal contempt charge.

## Conclusion

We affirm the judgment of the Trial Court awarding Father a divorce based on Mother's inappropriate marital conduct. We vacate the remainder of the Trial Court's judgment as between Father and Mother and remand for a new trial consistent with this Opinion. The residential parenting schedule and child support payments set forth in the final judgment shall remain intact pending future orders by the Trial Court. We also vacate the finding of criminal contempt as to Jerrolds and remand for a new hearing consistent with this Opinion. Costs on appeal are taxed one-half to the Appellant Kimberly Ruth McDaniel, and her surety, and one-half to the Appellee, Harold Dean McDaniel, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE